ALLAN STROUD *v.* STATE OF INDIANA.

[No. 570S107.  Filed October 15, 1971.
Rehearing denied December 20, 1971.]

*Franklin Miroff,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John T. Carmody, Frederick R. Spencer,* Deputies Attorney General, for appellee.

ARTERBURN, C. J.—On August 21, 1969, appellant was charged by indictment with the offense of Sale of Obscene Literature. Appellant moved to quash the indictment, alleging "that the statute on which this action was based, Acts 1961, ch. 40, sec. 1, p. 70 (Burns 10-2803) is unconstitutionally vague and provides for constitutional censorship and invasion of privacy." The trial court overruled the motion, whereupon, the appellant entered a plea of not guilty, waiving jury trial. On January 21, 1970, the court found the appellant guilty and fined him one hundred dollars [$100.] and costs.

Appellant sets forth four propositions of alleged error, which in substance presents three issues for our consideration, they are as follows:

(1) Whether *Burns Ind. Stat. Ann.*, sec. 10-2803, infra, which, inter alia, provides that it is a criminal offense to sell obscene literature, is unconstitutional on its face.

(2) Whether *Burns Ind. Stat. Ann.*, sec. 10-2803, infra, is unconstitutional as applied to the facts of this case.

(3) Whether the evidence presented was sufficient to support the finding of appellant's guilt beyond a reasonable doubt.

We will first consider appellant's contention that *Burns Ind. Stat. Ann.*, sec. 10-2803, is unconstitutional on its face. Appellant bases this contention on the premise that the statute; (1) is violative of his First Amendment rights of freedom of speech and press, and (2) fails to convey an adequate description of the evil intended to be prohibited so that a person of ordinary comprehension subject to the law can know what conduct on his part will render him liable to its penalties, and further in this regard, that it is so broad that it permits arbitrary prosecution under its proscription, in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. With these contentions we cannot agree. First, as to appellant's urging that *Burns Ind. Stat. Ann.*, sec. 10-2803, infra, is violative of his First Amendment rights of freedom of speech and press, there is no merit to the contention, as obscenity has never been afforded the protection of the First Amendment. In *Roth* v. *United States* (1957), 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498, the Supreme Court in unequivocal language stated, "We hold that obscenity is not within the area of constitutionally protected speech or press." (354 U. S. at 485). In *Campbell* v. *State* (1971), 256 Ind. 630, 271 N. E. 2d 463, 465, regarding an individual's First Amendment rights, we made this observation.

"The right of free expression, guaranteed by the First Amendment to the Constitution of the United States, exists but as a unitary portion of a group of corollary rights each of which can only be exercised to the extent that such does not encroach upon or erode the others. The States, within

the limitations imposed by the due process and equal protection requirements of the Fourteenth Amendment to the Constitution of the United States, may regulate and restrain the exercise of the freedom of expression, thereby insuring to all the freedom from the abuse exercise of the rights of others, including the right of free expression."

In summary, *Burns Ind. Stat. Ann., supra,* does not violate appellant's First Amendment Rights, in light of the fact that these rights are not absolute and the State has a right ■ to restrain and regulate the exercise of these rights, under its police power, to protect the public health, public morals, public order, public safety or public welfare. *Hanley v. State Dept. of Conservation et al.* (1954), 234 Ind. 326, 123 N. E. 2d 452.

We will now consider appellant's contention that *Burns Ind. Stat. Ann.,* sec. 10-2803, is unconstitutional because it fails to convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *Burns Ind. Stat. Ann.,* sec. 10-2803 provides:

"10-2803. *Obscene literature and devices — Circulation, possession, manufacture.* — Whoever knowingly sells or lends, or offers to sell or lend, or gives way, or offers to give away, or in any manner exhibits or has in his possession, with or without intent to sell, lend or give away, any *obscene, lewd, indecent or lascivious* book, pamphlet, paper, drawing, lithograph, engraving, picture, daguerreotupe, photograph, stereoscopic picture, model, cast, instrument, or article of indecent or immoral use, or instrument or article for procuring abortion, or for self-pollution, or medicine for procuring abortion, or advertise the same, or any of them, for sale, or writes or prints any letter, circular, handbill, card, book, pamphlet, advertisement or notice of any kind, or gives information orally, stating when, how, where, or by what means, or of whom any of the obscene, lewd, indecent or lascivious articles or things, hereinbefore mentioned can be purchased, borrowed, presented or otherwise obtained, or are manufactured; or whoever knowingly manufactures, or draws and exposes, or draws with intent to sell or have sold, or prints any such articles or things, shall be fined not less than twenty dollars [$20.00] nor more than one thousand dollars [$1,000.00], to which may be added

imprisonment for not less than twenty [20] days nor more than one [1] year; but nothing in this act shall be construed to affect teaching in regularly chartered medical colleges, or the publication of standard medical books, or the practice of regular practitioners of medicine or druggist in their legitimate business." [Acts 1961, ch. 40, sec. 1 p. 70] (Emphasis added)

It is the emphasized portion of the Statute which the appellant urges fails to adequately convey a description of the evil intended to be prohibited. These words, obscene, lewd, indecent and lascivious, do adequately convey a description of the evil intended to be prohibited. Our opinion is supported by the United States Supreme Court's decision in *Roth* v. *United States* (1957), 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498, wherein, the Court made the following observation and statement regarding an allegation that the two statutes involved therein were unconstitutional because they failed to provide a "reasonably ascertainable standard of guilt." The *Roth* decision clearly answers the question presented here.

"It is argued that the statutes do not provide reasonably ascertainable standards of guilt and therefore violate the constitutional requirements of due process. *Winters* v. *New York*, 333 U. S. 507, 92 L. Ed. 840, 68 S. Ct. 665. The federal obscenity statute makes punishable the mailing of material that is 'obscene, lewd, lascivious, or filthy . . . or other publication of an indecent character.' The California statute makes punishable, inter alia, the keeping for sale or advertising material that is 'obscene or indecent.' The thrust of the argument is that these words are not sufficiently precise because they do not mean the same thing to all people, all the time, everywhere." [354 U. S. 491]

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice . . .' *United States* v. *Petrillo*, 332 U. S. 1, 7, 8, 91 L. Ed. 1877, 1883,

67 S. Ct. 1538. *These words,* applied according to the proper standard for judging obscenity, already discussed, *give adequate warning of the conduct proscribed* and mark '. . . boundaries sufficiently distinct for judges and juries fairly to administer the law . . . That there may be marginal cases in which it is difficult to determine the side of the line on

\*[354 U. S. 492]

\*which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense . . .' " [Emphasis added; 354 U. S. 491]

The following cases cite the above portion of the *Roth* decision as authority for the proposition. *Reed Enterprises et al.* v. *Clark* (1967), 278 F. Supp. 372 at 382; *McGrew* v. *City of Jackson, Mississippi* (1969), 307 F. Supp. 754 at 757; *McAlpine* v. *Reese* (1970), 309 F. Supp. 136 at 139; *Hosey* v. *City of Jackson, Mississippi* (1970), 309 F. Supp. 527 at 529; *Karp* v. *Collins* (1970), 310 F. Supp. 627 at 638; *Miller* v. *United States* (1970), 431 F. 2d 655 at 656.

We will next consider appellant's contention that *Burns Ind. Stat. Ann.,* sec. 10-2803, *supra,* is "unconstitutional as applied" to the facts of the instant case. At this point, having already determined that the statute is constitutional, the question raised by appellant's contention that the statute is unconstitutional as applied, is now moot. In analysis, the only question which remains is whether the facts of the instant case are such as to fall within the ambit of a factual setting proscribed by the above statute, namely whether there was sufficient evidence of probative value from which the trier of the facts, in light of the standards laid down in *Roth* v. *United States, supra,* and other cases since decided involving the question of obscenity, could conclude that the appellant was guilty of the conduct proscribed by the statute. In every such case there is always the question of whether the appellant's conduct is within the statutory regulation or proscription. Further, a determination that an appellant's conduct is not within the regulation or proscription does not

mean that the statute under which he was convicted is "unconstitutional," it quite simply means there was insufficient evidence. For this reason we joint the appellant's final contentions in one sufficiency question. In beginning, we point out that when determining whether a verdict is supported by sufficient evidence, this court must do so in light of the rule that, this court will not weigh the evidence nor resolve the questions of credibility, but will look to the evidence most favorable to the State and the reasonable inferences therefrom which support the verdict of the trial court or jury. *Washington* v. *State* (1971), 257 Ind. 40, 271 N. E. 2d 727; *Davis* v. *State* (1971), 256 Ind. 85, 267 N. E. 2d 63; *Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407; *Sharp* v. *State* (1970), 254 Ind. 435, 260 N. E. 2d 593; *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558; and *Langley* v. *State* (1968), 250 Ind. 29, 232 N. E. 2d 611. A conviction must be affirmed, if having applied the rule, there is evidence of probative value, from which the trier of facts could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Gann* v. *State* (1971), 256 Ind. 429, 269 N. E. 2d 381; *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89.

Before looking to the evidence most favorable to the State, we point out that the essential elements of the offense of Selling Obscene Literature, as provided for in *Burns Ind. Stat. Ann., supra* are (1) a *sale,* (2) of *obscene literature.*

The State presented the following evidence to prove the element of a "sale", as required by the Statute. The State's witness, Indianapolis Police Officer, Charles Broeking, gave the following testimony regarding the sale. Officer Broeking first told of his entering *The Adult Bookstore,* where the appellant was employed to censor and sell magazines and other articles. He further testified that he purchased a newspaper SCREW from the appellant for fifty cents. From Officer Broeking's testimony there was clearly sufficient evidence to

support the conclusion by the trial court that there was a sale. The only remaining and real question before us is whether the sale was of obscene literature. In considering this issue we must do so in light of the standards for judging obscenity espoused by the Supreme Court of the United States.

The question of whether obscenity was an utterance within the protection of free speech and press, guaranteed by the First Amendment to the Constitution of the United States, was first presented to the United States Supreme Court in *Roth* v. *United States* (1957), 354 U. S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304. In *Roth* the Court held that "In light of . . . history, it is apparent that the unconditional phrasing of the First Amendment was not intended to protect every utterance." [354 U. S. at 483]. Further, the Court held ". . . that obscenity is not within the area of constitutionally protected speech and press." [354 U. S. at 485]. The Court then proceeded to approve the following standard for judging obscenity:

"Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." [354 U. S. at 489]

Five years later in *Manual Enterprises, Inc., et al.* v. *Day* (1962), 370 U. S. 478, 8 L. Ed. 2d 639, 82 S. Ct. 1432, the Court narrowed the broad standard set down in *Roth* and said regarding the material in question therein alleged to be obscene:

". . . [W]e find lacking in these magazines an element which, no less than 'prurient interest,' is essential to a valid determination of obscenity . . . These magazines cannot be deemed so offensive on their face as to affront current community standards of decency—a quality that we shall hereafter refer to as 'patent offensiveness' or 'indecency.' Lacking that quality, the magazine cannot be deemed legally 'obscene', . . ." [370 U. S. at 482]

\* \* \*

"The Court of Appeals was mistaken in considering that Roth made 'prurient interest' appeal the sole test of obscenity." [370 U. S. at 486]

Thus, after the *Manual Enterprises, Inc.* v. *Day, supra,* material which appealed to the "prurient interest" alone was insufficient, it also had to be "patently offensive", as to affront current community standards of decency. At this point it still was not clear what the court in *Roth* meant by "community standards" but the question was clearly resolved in *Jacobellis* v. *Ohio* (1964), 378 U. S. 184, 84 S. Ct. 1676, 12 L. Ed. 2d 793, where the court stated:

"It has been suggested that the 'contemporary community standards' aspect of the Roth test implies a determination of the constitution question of obscenity in each case by the standards of the particular local community from which the case arises. This is an incorrect reading of Roth." [378 U. S. at 192]

\* \* \*

"We thus reaffirm the position taken in Roth to the effect that the constitutional status of an allegedly obscene work must be determined on the basis of a *national standard.*" [Emphasis added, 378 U. S. at 195].

In *A Book named 'John Cleland's Memoirs of a Woman of Pleasure, et al.* v. *Attorney General of the Commonwealth of Massachusetts* (1966), 383 U. S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975, the Court reformulated the Roth standard and actually added a third criteria, as seen in the following statement:

"We defined obscenity in Roth in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 U. S., at 489, 1 L. Ed. 2d at 1509. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the

material is utterly without redeeming social value." [383 U. S. at 418].

The Court also made other important observations, which we note. First, the Court noted: "Each of the three federal constitutional criteria is to be applied independently; . . . " [383 U. S. at 419]. Second, the Court held that ". . . the circumstances of production, sale, and publicity are relevant in determining whether or not the publication or distribution of the book is constitutionally protected." [383 U. S. at 420] This latter point was a significant issue in two later cases, *Redrup* v. *New York* (1967), 386 U. S. 767, 18 L. Ed. 2d 515, 87 S. Ct. 1414, and *Ginzburg et al.* v. *United States* (1966), 383 U. S. 463, 16 L. Ed. 2d 31, 86 S. Ct. 942; see also, *Ginsberg* v. *New York* (1968), 290 U. S. 629, 20 L. Ed. 2d 195, 88 S. Ct. 1274, where the sale involved was to minors in violation of a New York statute. Also, closely related to this point, the Court in *Mishkin* v. *New York* (1966), 383 U. S. 502, 16 L. Ed. 2d 56, 86 S. Ct. 958 stated:

"We adjust the prurient-appeal requirement to social realities by permitting the appeal of this type of material to be assessed in terms of the sexual interests of its intended and probable recipient group . . ." [383 U. S. at 509]

From the foregoing discussion, the standard for judging obscenity, as developed by the Supreme Court of the United States in *Roth* v. *United States, supra,* and subsequent decisions, is as follows:

(1) The dominant theme of the material taken as a whole appeals to a prurient interest in sex, assessing such in terms of the sexual interests of the intended and probable recipient group of the material;

(2) The material is patently offensive because it affronts contemporary community standards relating to the description or reproduction of sexual matters, in this regard the material must affront contemporary national standards rather than the standards of the particular community from which the case arose;

(3) The material is *utterly without* redeeming social value, that is, when taken as a whole, it has no literary, scientific, artistic or any other form of social importance.

The Supreme Court of the United States has never made a clear statement defining its use of the words "utterly without". It is clear, however, that the mere presence of a minimum amount of socially redeeming substance cannot place otherwise obscene material within the protection of the First Amendment. One page of poetry of literary value or the Lords Prayer, placed in the midst of numerous pages of hard core pornography cannot render the entire publication non-obscene and bring it within the purview of constitutional protection, a contrary conclusion would render the proscription meaningless. Thus, "utterly without" redeeming social value must mean weighed as a whole, the material is of no social value.

Appellant urges that the decision of the United States Supreme Court in *Stanley* v. *Georgia* (1969), 394 U. S. 557, 22 L. Ed. 2d 542, 89 S. Ct. 1243, "leads to the conclusion that the mere distribution or showing of allegedly obscene materials without intent to distribute the material to minors or to distribute the material in such manner as to intrude upon the sensibilities or privacy of the general public, or, put another way, thrusting the materials off on unsuspecting individuals, is not constitutionally punishable." In effect appellant is urging that *Stanley* substantially overruled *Roth* and other cases decided under it, in this, appellant is in error. The Supreme Court in *Stanley* v. *Georgia, supra,* held that "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." [394 U. S. at 568]. However, the Court went on to say, "Roth and the cases following that decision are not impaired by today's holding." [394 U. S. at 568]. In *United States* v. *Reidel* (1971), 402 U. S. 351, 91 S. Ct. 1410, 28 L. Ed. 2d 813, the Supreme Court reversing the lower Court's sustaining of the defendant's motion to dismiss on the ground that *Stanley*

constitutionally protected delivery of obscene material, made this significant observation:

"The District Court ignored both Roth and the express limitations on the reach of the Stanley decision. Relying on the statement in Stanley that 'the Constitution protects the right to receive information and ideas . . . regardless of their social worth,' 394 U. S., at 564, 22 L. Ed. 2d at 549, the trial judge reasoned that 'if a person has the right to receive and possess this material, then someone must have the right to deliver it to him.' He concluded that § 1461 could not be validly applied 'where obscene material is not directed at children, or it is not directed at an unwilling public, where the material such as in this case is solicited by adults . . .' "

"The District Court gave Stanley too wide a sweep. To extrapolate from Stanley's right to have and peruse obscene material in the privacy of his own home a First Amendment right in Reidel to sell it to him would effectively scuttle Roth, the precise result that the Stanley opinion abjured. Whatever the scope of the 'right to receive' referred to in Stanley, it is not so broad as to immunize the dealings in obscenity in which Reidel engaged here—dealings which Roth held unprotected by the First Amendment." [28 L. Ed. 2d at 817]

We find no merit to appellant's urging that the Court's decision in Stanley v. Georgia, supra, affected the Roth decision and those cases since decided under it.

We will now turn to determine whether the material sold by the appellant in the instant case was obscene. To prove that the appellant had sold "obscene literature," the State offered and the court admitted, the best evidence, that is, the material alleged to be obscene, a newspaper named SCREW.

It is impossible to completely describe in detail the full content of twenty-eight pages of the publication SCREW, herein alleged to be obscene. The publication contains some forty photographs of nude men and women, some of which completely expose the sex organs of each sex. One such photograph portrays two nude men. One man is standing, the other is sitting at his feet with his head between his legs. The

genitals of each are fully exposed. The photograph appears as an illustration with an article concerning the liberation of homosexuals. There are numerous articles dealing with various topics all of which in some manner are tuned to the leer of the sensualist. An example is an article titled, "The Horny Armadildo." The article discusses a device called a "Duo Stimular". The device, made of rubber, is designed to be worn on the male genital, to multiply and intensify female excitement in sexual intercourse. The top one-half of this particular page, however, suggestively illustrates another use of the device. Shown is a lifesize photograph of two hands holding a partially peeled banana with attached "Duo Stimular" fit into position. There are also numerous advertisements for dildoes, films, photographs and other such similar paraphernalia. There are two pages of personal advertisements mostly soliciting partners for various sexual acts including intercourse and sodomy. We need not, for the purpose here, go further into the content of the publication, we only point out that the remainder of the content is of the same character as briefly illustrated above.

Appellant offered no specific evidence to prove that the newspaper SCREW, in issue here, was of any socially redeeming value, although, he was permitted to use "expert" witnesses in an attempt to establish that the publication was not obscene. We point out that such opinion testimony appears to be improper. The determination as to whether the publication was obscene was the ultimate fact in issue. Expert testimony is never proper when the expert is called to give an opinion as to the ultimate fact in issue, such is to be determined by the triers of the fact alone. Further, expert testimony is permitted when expertise or expert knowledge in a particular area is required because men of ordinary experience would be unable to understand or comprehend a particular matter. To permit experts to give their opinion as to whether material is obscene in a case of this sort is as clearly erroneous as permitting experts to give

their opinions as to whether a defendant acted negligently in a negligence case. *Hamrick* v. *State* (1892), 134 Ind. 324, 34 N. E. 3; *McCoy* v. *General Glass Corporation* (1938), 106 Ind. App. 116, 17 N. E. 2d 473; and *Briney* v. *Williams* (1968), 143 Ind. App. 691, 242 N. E. 2d 132; see also 13 I.L.E. *Evidence* §§ 253 and 254.

In summary, the evidence is sufficient to sustain the appellant's conviction and the trial court's finding that, (1) the dominant theme of the newspaper SCREW, sold by appellant, taken as a whole appeals to a prurient interest in sex, assessing such in terms of the sexual interests of the intended and probable recipient group of the material; (2) the newspaper SCREW, sold by the appellant is patently offensive, because it affronts contemporary national standards relating to the description and reproduction of sexual matters; (3) the newspaper SCREW, sold by the appellant, is utterly without redeeming social value. We therefore, as did the trial court, hold that the newspaper SCREW, sold by appellant is obscene.

Judgment of the trial court is offirmed.

Prentice, Givan, JJ., concur, Hunter, J., concurs in result; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DEBRULER, J.—This case arises out of a sale of a weekly newspaper entitled "Screw" to an adult which took place inside a bookstore. There is no evidence of pandering or of thrusting such material on an unwilling or unsuspecting public, or the involvement of juveniles. Quite the contrary, this store obviously attempted to shield its products from public view (curtains on the windows), to discourage the casual browsers (entrance fee requirements), and specifically prohibited juveniles from entering the store.

The appellant raises four objections to this conviction. The first objection is that the Indiana obscenity statute (I.C. 1971,

35-30-10-1, being Burns § 10-2803), is unconstitutional on its face. This argument relies in part on an historical analysis to demonstrate that the statute could be read in an overly restrictive or arbitrary way. However, reading the statute as we must, to incorporate the interpretations of the Supreme Court of the United States in this area, it is clear that statute is constitution on its face. *Roth* v. *U. S.* (1957), 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498. See also *Henley* v. *Wise,* 303 F. Supp. 62 (N.D. Ind., Hammond Div., 1969).

Appellant's second argument is that the statute in question is unconstitutional as applied. Appellant takes the position that under the Supreme Court's rulings in *Redrup* v. *New York* (1967), 386 U. S. 767, 87 S. Ct. 1414, 18 L. Ed. 2d 515, and *Stanley* v. *Georgia* (1969), 394 U. S. 557, 89 S. Ct. 1243, 22 L. Ed. 2d 542, a general prohibition of the distribution of obscene materials between consenting adults is unconstitutional, and that any prohibition must meet the limited Redrup tests, which concern themselves with specific state interests which override the interests protected by the First Amendment. This argument, although it has considerable merit as a general approach to this area, lacks constitutional support since the United States Supreme Court's decision in *U. S.* v. *Reidel* (1971), 91 S. Ct. 1410. In that case the court stated that "[R]oth has squarely placed obscenity and its distribution outside the reach of the First Amendment and they remain there today." *Id.* at 1413. Thus, there is no constitutional bar to the application of the statute in question to a "private" sale of obscene materials between adults.

The appellant's third objection is that the periodical in question is not obscene according to constitutional standards. In considering this objection, we are called upon and cannot avoid the making of "an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." *Jacobellis* v. *Ohio* (1964), 378 U. S. 184, 84 S. Ct. 1676, 12 L. Ed. 2d 793.

I am in complete agreement with the rest of this Court that the periodical in question is vulgar trash representing verbal and pictorial pollution of the worst kind. However, the question before the Court is whether the publication is obscene in the constitutional sense, not in the layman's sense. In deciding this question we are necessarily guided by the United States Supreme Court which has taken an active role in this sensitive constitutional area. A study of cases decided by the United States Supreme Court indicates that the struggle to arrive at a clear definition of obscenity has been much more difficult for the court than the actual application of that standard to specific instances. As a matter of fact, the cases in which the United States Supreme Court has allowed a conviction to stand on the basis that the material is obscene, without more, are virtually non-existent. To put the United States Supreme Court's decisions in this area in a proper context, it will be necessary to briefly discuss the development of the definition of obscenity.

The starting point for determining the proper definition of obscenity is, of course, *Roth* v. *U. S., supra,* recently re-affirmed in *U. S.* v. *Reidel, supra.* The *Roth* case clearly held that "obscenity" was not protected by the First and Fourteenth Amendments to the Constitution of the United States, a position which had been generally accepted prior to *Roth.* As the Court put it in *Roth:*

> "All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guarantees, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance." 354 U. S. at 484.

The *Roth* case of course re-affirmed the fundamental importance of First Amendment protection in this area and concluded that:

"It is therefore vital that the standards for judging obscenity safeguard the protection of freedom of speech and press for material which does not treat sex in a manner appealing to prurient interest." 354 U. S. at 488.

*Roth* rejected the well-known *Hicklin* test for obscenity as being overboard, see *Regina* v. *Hicklin* (1868), LR 3 QB 360, and substituted a much narrower test for obscenity, that is, "whether to the average person, applying community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U. S. at 489.

The Court commented on the place of sex in the First Amendment protection as follows:

"However, sex and obscenity are not synonymous. Obscene material is material which deals with sex in a manner appealing to prurient interest. . . . Sex, a great and mysterious mature force in human life, has indisputably been a subject of absorbing interest to mankind through the ages; it is one of the vital problems of human interest and concern. As to all such problems, this Court said in Thornhill v. State of Alabama, 310 U. S. 88, 101-102, 60 S. Ct. 736, 744, 84 L. Ed. 1093:

" 'The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully *all matters of public concern* without previous restraint or fear of subsequent punishment.' " (Original emphasis.)
354 U. S. at 487-488.

In distinguishing a protected interest in sex from a nonprotected interest in obscenity, the Court stated that:

"We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I. Model Penal Code, § 207.10 (2) (Tent. Draft no. 6, 1957), viz:

" '. . . A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description as representation of such matters. . . .' "
354 U. S. at 487, fn. 20.

Moreover, this restrictive test of what material will be deemed outside the protection of the First Amendment has been narrowed even further in decisions subsequent to *Roth*. In *Manual Enterprises, Inc.* v. *Day* (1962), 370 U. S. 478, 82 S. Ct. 1432, 8 L. Ed. 2d 639, the Court reversed an obscenity conviction under 18 U.S.C.A. § 1461, in a case involving magazines which all parties admitted were published primarily for homosexuals to appeal to the "prurient interest" of that group and which had no other merit of any kind. The Court held that representation of male nudes was not "patently offensive," that is that "these magazines cannot be deemed so offensive on their face as to affront current commuity standards of decency," 370 U. S. at 482, and that regardless of their obvious prurient appeal to the readers, unless they were also patently offensive in this sense, their prohibition could not be squared with First Amendment freedoms. Justice Harlan, speaking for the Court pointed out that:

> "The Court of Appeals was mistaken in considering that Roth made 'prurient interest' appeal the sole test of obscenity. Reading that case as dispensing with the requisite of patently offensive portrayal would be not only inconsistent with § 1461 and its common law background, but out of keeping with Roth's evidence purpose to tighten obscenity standards." 370 U. S. at 487.

Later, in *Jacobellis* v. *Ohio, supra,* the Court reiterated its recognition in *Roth* that material can be excluded from constitutional protection only if it is found to be utterly without redeeming social importance. Finally, in *A Book Named "John Cleland's Memoirs of a Woman of Pleasure* v. *Attorney General of Massachusetts* (1966), 383 U. S. 413, 86 S. Ct. 975, 16 L. Ed. 2d 1, the Court stated what has become the dominant, if not majority, standard for distinguishing material which can be constitutionally prohibited as obscene. In this case, the Court reversed the Supreme Judicial Court of Massachusetts holding that the book, commonly known as "Fanny Hill", was obscene. The Court held that the follow-

ing three elements were independently necessary and jointly sufficient conditions for the prohibition of materials as obscene:

"(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representations of sexual matters; and (c) the material is utterly without redeeming social value." 383 U. S. at 418.

And the Court further stated that:

"The Supreme Judicial Court erred in holding that a book need not be 'unqualifically worthless before it can be deemed obscene.' A book can not be proscribed unless it is found to be *utterly* without redeeming social value. This is so even though the book is found to possess the requisite prurient appeal and to be patently offensive. Each of the three federal constitutional criteria is to be applied independently; the social value of the book can neither be weighed against nor cancelled by its prurient appeal or patent offensiveness." (Original emphasis.) 383 U. S. at 419.

The Court thus explicitly added a third test which had been implicit in its previous decisions, and held that even if a work appealed to the prurient interest, and was patently offensive, it might still claim constitutional protection if it had even a modicum of social value.

The historical development of the U. S. Supreme Court's test for obscenity thus demostrates a continuing delimitation of materials deemed obscene and therefore outside the limits of constitutional protection. At the same time, we note a corollary expansion of the standard to include the actions of the seller in relation to the material as opposed to considering the material alone. Actions in this area may well speak louder than words. See *Ginzburg* v. *U. S.* (1966), 383 U. S. 463, 86 S. Ct. 942, 16 L. Ed. 2d 31.

The historical development of this obscenity standard also demonstrates a great deal of confusion and difference in opin-

ion regarding the meaning of the test. With nothing to guide us but the verbal definition we would be but little advanced in an attempt to make the necessary constitutional judgment in this area. Fortunately for our decision, however, the Supreme Court has not enunciated this linguistic standard and absolved itself of further dealings in this area. On the contrary, as pointed out above, that Court has taken the lead in applying the test and has involved itself in "making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." 378 U. S. at 190.

In looking to specific applications of this announced standard as set forth in *Memoirs, supra,* we are guided by *Redrup, supra,* the most important recent case (in the sense of its practical effect on the law) in this area. In *Redrup,* the Court considered three separate state convictions under obscenity laws, the first two which were similar to the case before us. In the first case under *Redrup,* a plainclothes officer bought two paperback books ("Lust Pool" and "Shame Agent") from a newstand in New York City. In the second case, a citizen purchased two magazines ("High Heels" and "Spree") from a newstand-bookstore in Kentucky. Both sellers were convicted under state laws prohibiting the selling of obscene materials. The third case concerned a decision by the Supreme Court of Arkansas upholding a declaratory judgment that certain magazines were obscene.

The United States Supreme Court originally granted certiorari on these three cases to decide particularized questions of law upon the hypothesis that the material was in fact obscene. The first two cases attacked the lack of a "Scienter" requirement on the sale by the clerks, and the third case was an attack on "vagueness" and "prior restraint" in the Arkansas procedure. See *Redrup* v. *New York, supra; Austin* v. *Kentucky* (1966), 384 U. S. 916, 86 S. Ct. 1362, 16 L. Ed. 2d 438; *Gent v. Arkansas* (1966), 384 U. S. 937, 86 S. Ct. 1454, 16 L. Ed. 2d 537.

However, after granting certiorari on the assumption that the materials were in fact obscene, and without benefit of brief or oral argument on the point, the Court in a per curiam decision joined by seven out of nine justices, decided that the original hypothesis that the materials in question were obscene was invalid. The Court, therefore, went to the merits of the obscenity question in each case and held that none of the material was obscene.

The decision in *Redrup* strongly implied that the Court had decided to take yet another giant step in removing itself from the role of censor in the area when the sale was between consenting adults. As the Court pointed out:

> "In none of the cases was there a claim that the statute in question reflected a specific and limited state concern for juveniles. See Prince v. Commonwealth of Massachusetts, 321 U. S. 158, 64 S. Ct. 438, 88 L. Ed. 645; cf. Butler v. State of Michigan, 352 U. S. 380, 77 S. Ct. 524, 1 L. Ed. 2d 412. In none was there any suggestion of an assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it. Cf. Breard v. City of Alexandria, 341 U. S. 622, 71 S. Ct. 920, 95 L. Ed. 1233; Public Utilities Comm'n of District of Columbia v. Polak, 343 U. S. 451, 72 S. Ct. 813, 96 L. Ed. 1068. And in none was there evidence of the sort of 'pandering' which the Court found significant in Ginzburg v. United States, 383 U. S. 463, 86 S. Ct. 942, 16 L. Ed. 2d 31." 386 U. S. at 769.

The decision in *Redrup* went on to discuss the varying approaches taken by different justices, as follows:

> "Two members of the Court have consistently adhered to the view that a State is utterly without power to suppress, control or punish the distribution of any writings or pictures upon the ground of their 'obscenity'. A third has held to the opinion that a State's power in this area is narrowly limited to a distinct and clearly identifiable class of material. Others have subscribed to a not dissimilar standard, holding that a State may not constitutionally inhibit the distribution of literary material as obscene unless '(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently

offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value,' emphasizing that the 'three elements must coalesce,' and that no such material can 'be proscribed unless it is found to be *utterly* without redeeming social value.' A Book Named 'John Clelands' Memoirs of a Woman of Pleasure' v. Attorney General of Com. of Massachusetts, 383 U. S. 413, 418-19, 86 S. Ct. 975, 977-978. Another Justice has not viewed the 'social value' elements as an independent factor in the judgment of obscenity. Id., at 46-462, 86 S. Ct. 975, 998-999 (dissenting opinion).

"Whichever of these constitutional views is brought to bear upon the cases before us, it is clear that the judgments cannot stand." 386 U. S. 770.

The clear implication of this decision was that unless there was evidence of a concern for juveniles, or of an assault on individual privacy, or of pandering, the Court would not exclude any material from constitutional protection. Since the *Redrup* decision, the United States Supreme Court has strengthened this implication in its per curiam reversals of obscenity convictions. The Supreme Court has granted certiorari in at least twenty-nine cases after *Redrup,* and in twenty-eight of those cases has reversed obscenity convictions, citing *Redrup* in twenty-six of the cases.[1]

The one affirmance came in the case of *Landau* v. *Fording* (1966), 54 Cal. Rep. 177, aff'm in 388 U. S. 456 (1967), in which the lower court found a film by Jean Genet obscene. The Court found that the film contained explicit and vivid scenes of facts of masturbation, oral compulation, sodomy, voyeurism, nudity, sadism and masochism, and that it had been commercially exploited applying the *Ginzburg* test.

On examination the per curiam reversals indicate that the lower courts, both federal and state, have consistently misapplied the Supreme Court's test. For example, in *Dykema*

---

1. See "Report of the Commission on Obscenity & Pornography" (1970), p. 31, fn. 105, for a list of these cases. Also see *Childs* v. *Oregon* (1971), 91 S. Ct. 1248, and *Bloss* v. *Michigan* (1971), 91 S. Ct. 1615.

v. *Bloss* (1969), 17 Mich. App. 318, 169 N. W. 2d 367, the court of appeals of Michigan held fifteen magazines obscene which showed (1) women in enticing and lewd positions; (2) photographs of the pubic areas which accentuated and over-accentuated those areas; (3) photographs of women removing their final garment; and, (4) men with erections or partial erections. Presiding Judge Levin's dissent in this case fore-shadowed the United States Supreme Court's reversal of the conviction in *Bloss* v. *Dykema* (1970), 398 U. S. 278, 90 S. Ct. 1727, 26 L. Ed. 2d 230. As Judge Levin stated:

> "I am in entire agreement that the seized maps are vul-gar, tawdry and unpleasant. The question before us is not whether the odious magazines are obscene in the ordinary sense of the word. They clearly are—but whether they are obscene in the constitutional sense. The phrase 'obscene in the constitutional sense' is a term of art coined by the United States Supreme Court [citing Redrup] and, to the extent it has defined that term, its definition is controlling on us. Neither my personal opinion nor, I may respectfully add, the opinions of my colleagues is relevant where there is a controlling opinion from the United States Supreme Court.
>
> "The United States Supreme Court has undertaken the exposition and, control of the development of this area of law. It has made very clear that only in extraordinary cases will publications be deemed obscene in the constitutional sense." 17 Mich. App. at 340.

In *State* v. *Hoyt* (1970), 286 Minn. 92, 174 N. W. 2d 700, the Supreme Court of Minnesota upheld an obscenity convic-tion charging the sale of obscene books. The court found that the theme of each book was pointless "save as it serves to relate the characters to repeated accounts of lewd and degrad-ing episodes. They deal with filth for the sake of filth." *Id.* at 95. Justice Otis in a long and well-written dissent would have reversed on the authority of *Redrup*, stating that:

> "A careful reading of the cases cited leads me to the in-escapable conclusion that the books here for consideration cannot be held criminally obscene unless the state has proved beyond a reasonable doubt one or more of the significant

elements to which the court made reference in Redrup. In other words, the test seems to be whether or not the sale or distribution was directed at juveniles; whether it was an obtrusive assault on individual privacy; and whether there was evidence of pandering" 286 Minn. at 109-110.

The United States Supreme Court did reverse this conviction, citing *Redrup. Hoyt* v. *Minnesota* (1970), 399 U. S. 524, 90 S. Ct. 2241, 26 L. Ed. 2d 782.

In another example, in upholding an obscenity conviction, the Supreme Court of Tennessee had this to say:

"This film, considered as a whole, not only predominantly appeals to the prurient interest, in fact it has no other possible appeal. If this film is not patently offensive to the public or does not go substantially beyond customary limits of candor in dealing with sex, then we do not think it possible to make such a film." *Robert Arthur Management Corp.* v. *State* (1967), 220 Tenn. 101, 112-113, 414 S. W. 2d 638.

The Supreme Court reversed this opinion citing *Redrup, Robert Arthur Management Corp.* v. *Tennessee, ex rel. Canale* (1968), 389 U. S. 578, 88 S. Ct. 691, 19 L. Ed. 2d 777.

In *Books, Inc.* v. *U. S.*, 358 F. 2d 935 (1st Cir. 1966), Judge Wyzanski upheld an obscenity conviction of the book "Lust Job," finding that it was:

"a tale exclusively devoted to sexual adventures of its principal characters. Adulteries, seductions, and orgies are the only events of importance. The contacts described include not only sexual intercourses, but sodomy and other perversions." 358 F. 2d at 936.

This conviction was also reversed, citing *Redrup. Books, Inc.* v. *U. S.* (1967), 388 U. S. 449, 87 S. Ct. 2098, 18 L. Ed. 2d 1311.

In *U. S.* v. *392 Copies of a Magazine entitled "Exclusive,"* 373 F. 2d 633 (4th Cir. 1967), the Fourth Circuit upheld the validity of a confiscation and destruction order concerning ob-

scene material. The magazine "Exclusive" was described as follows:

> *"Exclusive* is a collection of photographs of young women. In most of them, long stockings and garter belts are employed to frame the pubic area and to focus attention upon it. A suggestion of masochism is sought by the use in many of the pictures of chains binding the model's wrists and ankles. Some of the seated models, squarely facing the camera, have their knees and legs wide-spread in order to reveal the genital area in its entirety. In one of the pictures, all of these things are combined: The model, clad only in a framing black garter belt and black stockings is chained to a chair upon which she is seated, facing the camera, with one knee elevated and both spread wide." 373 F. 2d at 634.

The Supreme Court reversed the conviction, again citing *Redrup. Central Magazine Sales, Ltd.* v. *U. S.* (1967), 389 U. S. 50, 88 S. Ct. 235, 19 L. Ed. 2d 49.

These Supreme Court reversals have, of course, influenced the lower court's decisions in this area. Several lower courts have interpreted the *Redrup* decision to limit state control of obscenity to the three areas of juveniles, invasion of privacy or pandering. See, for example, *U. S.* v. *4400 Copies of Magazines, etc.,* 276 F. Supp. 903 (D. Md. 1967) ; *People* v. *Stabile, et al.* (1969), 296 N. Y. S. 2d 815, 58 Misc. 2d 905; *Wayne Co. Prosecutor* v. *Doerfler* (1968), 14 Mich. App. 428, 165 N. W. 2d 648; *State* v. *J. L. Marshall News Co.* (1967), 13 Ohio Misc. 60, 232 N. E. 2d 435. Others have reversed on the grounds that the material supporting the conviction cannot be deemed obscene when compared with the Supreme Court's application of the test. *Hunt* v. *Keriakos,* 428 F. 2d 606 (1st Cir. 1970) ; *U. S.* v. *A Motion Picture Film, etc.,* 404 F. 2d 196 (2nd Cir. 1968) ; *Pinkus* v. *Pitchess,* 429 F. 2d 416 (9th Cir. 1970) ; *Commonwealth* v. *Dell Publications* (1967), 427 Pa. 189, 233 A. 2d 840. Either one of these interpretations would be sufficient to justify a reversal in the instant case.

The majority indicates that the use of expert witnesses in this case was improper because experts cannot properly be

called in to give an opinion on the ultimate fact in issue in a case. However, both experts called by the defense in this case carefully stated the tests for obscenity as they understood them, and carefully limited their testimony to those factual areas for which their background qualified them as experts. They both testified that the magazine, in their opinion, did not appeal to the prurient interest, did have social value, and did not exceed ordinary limits of candor. Such testimony is clearly relevant to the issues in this case. As Justice Frankfurter said, concurring in *Smith* v. *Calif.* (1959), 361 U. S. 147, 80 S. Ct. 215, 4 L. Ed. 2d 205, cited by appellant:

> "Unless we disbelieve that the literary, psychological or moral standards of a community can be made fruitful and illuminating subjects of inquiry by those who give their life to such inquiries, it was violative of 'due process' to exclude the constitutionality relevant evidence profferd in this case." 361 U. S. at 166.

See also 5 A. L. R. 3d 1158, 1194-1195, A. L. I., Model Penal Code, Proposed Official Draft (1962), § 251.4 (4).

NOTE.—Reported in 273 N. E. 2d 842.

