HARRY OLIVER *v.* STATE OF INDIANA.

[No. 3-672A15. Filed December 1, 1972. Rehearing denied March 21, 1973.]

*Abe Latker,* Fort Wayne, *Gilbert H. Deitch,* Atlanta, Georgia, *Robert Eugene Smith,* Towson, Maryland, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

## STATEMENT ON THE APPEAL

STATON, J.—Harry Oliver was found guilty by an Allen Circuit Court jury of selling obscene magazines. He received a fine of $1,000.00 and a sentence of thirty (30) days in the Allen County Jail.[1] His motion to correct errors raises these questions on appeal:[2]

1. Did the trial court commit reversible error by instructing the jury that the standard for determining obscenity is the local community standard rather than the national community standard?

2. Did the Allen Circuit Court commit reversible error when it assessed a harsher punishment than the Fort Wayne City Court?

---

1. IC 1971, 35-30-10-1; Ind. Ann. Stat. § 10-2803 (Burns 1972 Supp.).

2. Harry Oliver's motion to correct errors raised a total of five questions for determination by this court. We are reversing the trial court and need not extend the length of this opinion discussing the three additional questions raised. The issues discussed are dispositive of the appeal. *Lash* v. *Wright* (1972), 153 Ind. App. 299, 287 N.E.2d 255.

We reverse the trial court for instructing the jury that the local community standard should be used in determining obscenity. Assessing a harsher punishment than the Fort Wayne City Court is an additional error that has been conceded by the State. Only question one will be discussed under *Statement of the Law* in the opinion that follows.

STATEMENT OF THE FACTS: Harry Oliver worked as a clerk in the Adult Book Store located at 1213 South Calhoun Street in Fort Wayne, Indiana. On December 16, 1969, Ronald D. Snyder, a plainclothes police officer, entered the Adult Book Store at approximately 12:15 P.M. and paid his $1.00 admission fee. Officer Snyder was a member of the Fort Wayne City Police Vice and Narcotics Squad. Browsing around the store magazine racks for approximately ten minutes, he selected five magazines which were enclosed in clear plastic envelopes. These magazines were entitled: *Naked Now*, *Nude Living #53*, *Nudifax*, *Nude Living #55* and *Amateur Jaybird*. Officer Snyder purchased the five magazines from Harry Oliver at the checkout counter. On December 23, 1969, an affidavit charging Harry Oliver with selling obscene magazines was issued. His trial before the Fort Wayne City Court resulted in a finding of guilty. He appealed the finding of guilty, $500.00 fine and ten [10] day sentence in the Allen County Jail to the Allen Circuit Court where he pleaded not guilty and had a trial by jury. This jury trial, which ended on September 18, 1971, resulted in a second finding of guilty. He received a $1,000.00 fine and a sentence of thirty [30] days in the Allen County Jail. His motion to correct errors was filed on November 24, 1971 and the trial court overruled his motion to correct errors on March 14, 1972. This appeal was distributed to this Court fully briefed on August 23, 1972 and oral argument was completed on September 14, 1972.

STATEMENT OF THE ISSUES: Only two issues will be considered. These issues are:

1. Did the trial court commit reversible error by instructing the jury that the standard for determining obscenity

is the local community standard rather than the national community standard?

2. Did the Allen Circuit Court commit reversible error when it assessed a harsher punishment than the Fort Wayne City Court?

The State of Indiana has conceded in oral argument that the punishment assessed by the Allen Circuit Court was erroneous. A reversal of the trial court on these grounds would only require a remand for resentencing. Our *Statement on the Law* which follows will be on the first issue only.

STATEMENT OF THE LAW: Harry Oliver contends ". . . that the court erroneously charged the jury that the community standard to be applied was local rather than national in making a determination of obscenity." This contention is founded upon Instruction No. 12 which states:

"You are further instructed that the standard to be applied in this case is not what may or may not have been held to be obscene in other jurisdictions but what is acceptable in the local community. You as jurors represent the average members of this community and, as the triers of fact, are charged with the responsibility of making such determination, guided by the evidence presented and by your individual and collective awareness of the standards and norms of the community."

The record shows that Harry Oliver's counsel objected to Instruction No. 12 as follows:

"Now, 12?
"Mr. Piggott: Objection. It's not a correct statement of the law.
"The Court: It's the crux of the whole thing. No. 13.
"Mr. Piggott: No objection."

We agree with the above contention and stated objection.

The Supreme Court of Indiana in *Stroud* v. *State* (1971), 257 Ind. 204, 273 N.E.2d 842, 847 stated:

"From the foregoing discussion, the standard for judging obscenity, as developed by the Supreme Court of the United States in Roth v. United States, supra, and subsequent decisions, is as follows:

* * *

"(2)  The material is patently offensive because it affronts contemporary community standards relating to the description or reproduction of sexual matters, in this regard the material must affront *contemporary national standards rather than the standards of the particular community from which the case arose;*" (Our emphasis)

The State contends that *Stroud* v. *State, supra,* is not susceptible to retroactive application. This contention is stated as follows in the State's brief:

"In passing, the State would note that any requirement of the use of a national standard stemming from language in *Stroud* v. *State,* decided October 15, 1971, would not be applicable to the trial of this case, occurring in September of 1971, unless *Stroud* were given retroactive application."

If the Supreme Court of Indiana had been deciding an entirely new question of law in *Stroud* v. *State, supra,* the State's retroactive argument would have merit. This same question of law was decided in 1964 when the Supreme Court of the United States handed down an opinion in *Jacobellis* v. *Ohio* (1964), 378 U.S. 184, 192-195. The Court stated:

"It has been suggested that the 'contemporary community standards' aspect of the *Roth* test implies a determination of the constitutional question of obscenity in each case by the standards of the particular local community from which the case arises. This is an incorrect reading of *Roth.* . . .

* * *

"We do not see how any 'local' definition of the 'community' could properly be employed in delineating the area of expression that is protected by the Federal Constitution.  MR. JUSTICE HARLAN pointed out in *Manual Enterprises, Inc.,* v. *Day, supra,* 370 U.S., at 488, that a standard based on a particular local community would have 'the intolerable consequence of denying some sections of the country ac-

cess to material, there deemed acceptable, which in others might be considered offensive to prevailing community standards of decency'. . . .

\* \* \*

". . . The Court has explicitly refused to tolerate a result whereby 'the constitutional limits of free expression in the Nation would vary with state lines,' *Pennekamp* v. *Florida, supra,* 328 U.S., at 335; we seen even less justification for allowing such limits to vary with town or county lines."

Retroactiveness is an argument without merit. We reject it.

DECISION OF THE COURT: The trial court instructed the jury to determine obscenity by a condemned standard: *the standard of the particular local community from which the case arises.* This is reversible error. The judgment of the trial court should be and the same is hereby reversed with instructions to grant the Appellant a new trial.

Hoffman, C.J. and Sharp, J., concur.

NOTE.—Reported at 289 N.E.2d 545.

### STATEMENT ON REHEARING

SHARP, J.—My concurrence in the opinion written by Judge Staton in this case was premised primarily on *Stroud* v. *State* (1971), 257 Ind. 204, 273 N.E.2d 842, as a binding precedent at this juncture in our judicial history. In considering the petition for rehearing I think that it might be helpful to examine some of the antecedents of the *Stroud* case.

The continuing controversy over local versus national community standards in obscenity cases began in 1957 when the Supreme Court of the United States in *Roth* v. *United States* (1957), 354 U.S. 476, used the words "contemporaneous community standards" as the test to be applied in determining if material appealed to the "prurient interest". However, *Roth* did not indicate or dictate the scope of the concept of community. It was not until 1964 in *Jacobellis* v. *Ohio* (1964),

378 U.S. 184, that Justice Brennan, joined only by Justice Goldberg, declared the scope to be "national" rather than "local" in setting the scope of "community". Justice Brennan based his reasoning on dicta by Judge Learned Hand in *United States* v. *Kennerley* (DC SD NY 1913), 209 F. 119. The majority in *Jacobellis* was obtained only by Justices Black and Stewart concurring in separate written opinions by Justice Douglas joining Justice Black's opinion, and with Justice White concurring in the result without opinion.

When in 1966 a still divided Supreme Court of the United States coalesced the now three familiar elements of *Memoirs* v. *Massachusetts* (1966), 383 U.S. 413, the language used was that of *Roth's* "community standard" but without reference to the "national" standard of *Jacobellis*. The Supreme Court of the United States has not in any subsequent decision expressly stated whether it is "national" or "local" standard or what would be the scope of either term in regard to the size of the community. Inferences pointing in both directions can be made from the decisions rendered since the *Memoirs* case in 1966.

The inference that the Supreme Court of the United States intends for the scope to be "national" begins with the per curiam decision in *Redrup* v. *New York* (1967), 386 U.S. 767. The unknown author of *Redrup* after referring to the *Memoirs* test went on to note that at no time had a majority of the justices agreed on what those tests meant in measuring obscenity. The significance of *Redrup* as pointing to a national scope is that the Supreme Court has cited it in over thirty cases of per curiam reversal of state convictions. One such case, *Cain* v. *Kentucky* (1970), 397 U.S. 319, was one in which the Court of Appeals of Kentucky had taken the position that *Redrup* was not controlling since no clear majority of the Supreme Court of the United States had ever supported the principles enumerated in *Memoirs*. Another inference which could spring from the per curiam reversals based on *Redrup* is the apparent desire by the Supreme Court of the United

States to limit its position as a chief censor. These reversals by the Supreme Court of the United States may also reflect an unwillingness to determine and define precisely what constitutes "community standards".

It is certainly arguable that the Supreme Court of the United States may not have meant the term "community" to be "national." The term "national" has not been used since *Jacobellis* and then only by Justice Brennan. Further, in no obscenity case, including *Roth,* has a majority joined in a decision determining what constitutes the scope of the terms used. And finally, the changed composition of the Supreme Court of the United States since Roth renders uncertain any conclusion that the scope is to be "national". Both Chief Justice Burger and Justice Blackmun indicated in dissents in *Cain* and in *Hoyt* v *Minnesota* (1970), 399 U.S. 524, that they are in favor of a local rather than a national standard.

In *Stroud,* the Supreme Court of Indiana, through Chief Justice Arterburn, apparently adopted the language of *Memoirs* and *Jacobellis* at least figuratively, if not literally. However, the use of the term "national" by our Supreme Court in *Stroud* was not essential to its holding that by any standards or by either standard the defendant was guilty of selling obscene material. If the Supreme Court of the United States cannot be said to have definitely adopted the so-called national standard it ought not to be implied that our Indiana Supreme Court intended to go further and categorically adopt a national standard. This writer would harbor serious doubts that Chief Justice Arterburn in *Stroud* intended to set a more rigorous standard for the conviction in a criminal obscenity case than that required and mandated by the Supreme Court of the United States. I do not read *Stroud* as categorically adopting a "national standard" and freezing Indiana into such a position. If the Supreme Court of the United States should, at a future time, more clearly define the concept of "community standards" and in doing so permit a greater leeway for the states, within the federal system, to interpret

it more flexibly in terms of local conditions, I do not read *Stroud* as an impairment on the Indiana court to do so.

For me there is much wisdom in the statement of Justice Harlan dissenting in *Memoirs* v. *Massachusetts* when he stated:

> "My premise is that in the area of obscenity the Constitution does not bind the States and the Federal Government in precisely the same fashion. This approach is plainly consistent with the language of the First and Fourteenth Amendments and, in my opinion, more responsive to the proper functioning of a federal system of government in this area. See my opinion in Roth, 354 U.S., at 505-506. I believe it is also consistent with past decisions of this Court. Although some 40 years have passed since the Court first indicated that the Fourteenth Amendment protects 'free speech,' see Gitlow v. New York, 268 U.S. 652; Fiske v. Kansas, 274 U.S. 380, the decisions have never declared that every utterance the Federal Government may not reach or every regulatory scheme it may not enact is also beyond the power of the State. The very criteria used in opinions to delimit the protection of free speech—the gravity of the evil being regulated, see Schneider v. State, 308 U.S. 147; how 'clear and present' is the danger, Schenck v. United States, 249 U.S. 42, 52 (Holmes, J.); the magnitude of 'such invasion of free speech as is necessary to avoid the danger,' United States v. Dennis, 183 F. 2d 201, 212 (L. Hand, J.)—may and do depend on the particular context in which power is exercised. When, for example, the Court in Beauharnais v. Illinois, 343 U.S. 250, upheld a criminal group-libel law because of the 'social interest in order and morality,' 343 U.S., at 257, it was acknowledging the re-responsibility and capacity of the States in such public-welfare matters and not committing itself to uphold any similiar federal statute applying to such communications as Congress might otherwise regulate under the commerce power. See also Kovacs v. Cooper, 336 U.S. 77."

This federalistic thought of Justice Harlan would still appear to be a viable alternative for our nation's highest court in its consideration of this area of the law which constantly troubles our society and its judiciary.

With this comment and explanation I vote to deny the Appellee's Petition for Rehearing in this case.

NOTE.—Reported at 293 N.E.2d 515.