HARRY EDWARD REID *v.* STATE OF INDIANA.

[No. 1076S345. Filed February 6, 1978.]

*Harriette Bailey Conn,* Public Defender of Indiana, *Lawrence D. Giddings, David P. Freund, Bobby Jay Small,* Deputy Public Defenders, *Jerrilee P. Sutherlin,* Research Assistant, for appellant.

*Theodore L. Sendak,* Attorney General, *Kenneth R. Stamm,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with First Degree Murder, Ind. Code (Burns 1975) 35-13-4-1, accomplished with a handgun. Over an alibi defense, he was convicted of Second Degree Murder, Ind. Code (Burns 1975)

35-1-54-1, and was sentenced to life imprisonment. His appeal presents the following issues:

(1) Whether the trial court erred by admitting testimony concerning the results of a chemical test used to detect metal traces.

(2) Whether the court erred by permitting a State's witness to testify as an expert, over a defense objection that he was not qualified as such.

(3) Whether the court erred by overruling a motion to strike the testimony of a rebuttal witness for the State, which motion was predicated upon the State's having failed to reveal the substance of such testimony in response to a discovery order.

## ISSUE I

The State introduced evidence concerning the results of a trace metal detection technique which had been applied to the defendant's hands. This test, referred to as TMDT, is used to reveal the minute traces of metal that remain upon flesh or clothing which has come into contact with metal objects.

State's witness, Sgt. Chlebek, testified that upon the day of the shooting, he administered the TMDT by spraying the defendant's hands with a commercially prepared chemical solution and by then viewing his hands under an ultraviolet lamp. Chlebek stated that when this procedure is followed, areas which have recently been in contact with metal will glow in distinctive colors. Chlebek described the areas of the defendant's hands that glowed following the aforementioned procedure, as a band around the left ring finger and an area on the left palm. The witness stated that the florescence on the left ring finger indicated that the defendant had recently

worn a ring upon that finger, which Chlebek stated that the defendant had confirmed. Chlebek was instructed by the court to confine his testimony to the observations and to omit his conclusions. Chlebek further stated that the defendant's right hand glowed the appropriate color on the tip of the index finger, on the inside of the middle finger between the second and third joints, between the second and third joints of the little finger, and in a half-inch strip upon the palm.

The defendant objected to this evidence upon the grounds that the State had failed to establish the reliability of the TMDT and further that Chlebek did not qualify as an expert witness. Chlebek stated that his knowledge concerning the TMDT came from a seminar presented by the manufacturer of the chemical solution, written instructions that accompanied the chemical and his personal experience in conducting such tests upon approximately fifteen occasions. He admitted that he had no understanding of the reason for the reaction that occurred when such test was administered.

The defendant likens the TMDT to a lie detector test and asserts that the results should be rejected, as being similarly unreliable, citing *Vacendak* v. *State*, (1976) 264 Ind. 101, 340 N.E.2d 352, *Zupp* v. *State*, (1972) 258 Ind. 625, 283 N.E.2d 540 and *Robinson* v. *State*, (1974) Ind. App., 309 N.E.2d 833, 855. However, as we said of teeth marks, in *Niehaus* v. *State*, (1977) 265 Ind. 655, 359 N.E.2d 513, we see a marked distinction. It is acknowledged that in any given case, unreliable results may be produced in a polygraph test by influences that cannot be controlled or compensated for by a competent examiner. The TMDT, we believe, is generally recognized as reliable, and the defendant has cited us to no case wherein it has been rejected. We see no reason for rejecting evidence adduced by any scientific testing simply because it is subject to error if not

properly conducted. The persuasiveness of evidence produced by such a test is, in a large measure, dependent upon the expertise of the witness who conducted it, which in the final analysis is to be determined by the jury, only after an opportunity of careful cross examination.

## ISSUE II

The opinion given by the witness, Chlebek, and drawn from the aforementioned test was that the defendant had recently handled some metal object. He offered no opinion as to what that metal object was. The defendant's argument that the trace might as well have been produced by a cigarette lighter as by the handgun that produced the mortal wound is valid in determining the weight to be accorded to the evidence, but it is misplaced in a consideration of its admissibility. There can be no hard and fast rule as to the quantum of knowledge required to qualify a witness as an expert in a given field. It has been said that he must be shown to be competent upon the subject concerning which he is to testify. *Pittsburgh, etc. R. Co.* v. *Nicholas,* (1906) 165 Ind. 679, 76 N.E. 522; *City of Bloomington et al.* v. *Holt, Admr.,* (1977) Ind. App., 361 N.E.2d 1211, 1220. The determination of whether a witness is qualified to give an opinion is within the trial court's discretion. No precise knowledge is required, if the witness shows an acquaintance with the subject such as to qualify him to give an opinion. "The witness must have sufficient skill, knowledge or experience in that area to make it likely that his informed inference will aid the jury properly to determine such matters." Seidman, The Law of Evidence in Indiana, p. 21 and cases there cited. The extent of the witness' knowledge, however, affects the weight of his testimony, which is a matter for the jury to determine. *City of Bloomington, etc., supra.*

The qualification of an expert witness is generally left to the trial court's sound discretion, and the trial court's

determination will not be set aside unless there is clear error, often termed an abuse of discretion. *Niehaus, supra., Tyler* v. *State,* (1968) 250 Ind. 419, 236 N.E.2d 815; *Dougherty* v. *State,* (1934) 206 Ind. 678, 191 N.E.2d 84. The requirement that a witness be qualified before being permitted to testify as such is predicated upon the witness' offer of an opinion that is based upon facts that the average juror is incapable of interpreting for himself. *Stroud* v. *State,* (1971) 257 Ind. 204, 273 N.E.2d 842, vacated on other grounds 413 U.S. 911, 93 S.Ct. 3038, 37 L.Ed.2d 1025; *Keifer* v. *State,* (1927) 199 Ind. 10, 154 N.E. 870.

We find no error in the trial court's determination that the witness was qualified to give an opinion based upon the test that he had made.

## ISSUE III

Prior to trial, the defendant filed a discovery motion which was granted without objection from the State. The defendant presented an alibi defense which was substantiated by the testimony of his sister-in-law, who stated that the defendant and his girl friend were at the witness' apartment at the time the crime was committed. On cross examination of this witness, the State inquired as to whether or not she was personally acquainted with Sgt. Borkowski of the South Bend Police Department, and she replied that she was. The State further inquired if she had called Borkowski on the night of the crime, advised him that the defendant was at her house and requested that the police not come for him until morning. She responded that she had not. Borkowski was called subsequently by the State, as a rebuttal witness, and he testified that the sister-in-law had telephoned him on the night of the crime and had told him that the defendant had just shot someone and that he was at her apartment. He further testified that because of the family relationship and because the sister-in-law was afraid, he told her that he

would not involve her but that, upon a subsequent occasion, he advised her that if she testified as a witness for the defendant, he would be required to reveal the information.

The defendant moved to strike Borkowski's testimony upon the ground that the State had failed to reveal this information to him in compliance with the discovery order. The court denied the motion, and the defendant's claim of error is predicated thereon. The portion of the discovery order relied upon by the defendant is as follows:

"8. All evidence or information in the possession or under the control of the State of Indiana when such evidence or information may be favorable to the accused and material to the issue of guilt or punishment or could reasonable (sic) weaken or affect any evidence proposed to be introduced against the accused *or is relevant to the subject matter of the charge or in any manner may aid the accused in the ascertainment of the truth,* the disclosure and production to be made without regard to whether the evidence or information to be disclosed and produced is deemed admissible at the trial herein." (Emphasis added)

It is assumed that the defendant relies upon the emphasized portion of the above paragraph, inasmuch as the information contained in Borkowski's testimony can hardly be considered as being favorable to the accused.

The discovery order was overly broad and there is a serious question as to whether or not it was sufficiently specific to require the disclosure of rebuttal evidence. It should be remembered that we have previously said that "we do not require the State to lay bare its case in advance of trial nor that the criminal defendant be allowed a fishing expedition." *Bernard* v. *State,* (1967) 248 Ind. 688, 692, 230 N.E.2d 536. Discovery orders so general as the one issued herein open the door to subsequent problems by making it very difficult to determine whether or not there has been a good faith compliance.

In *State ex rel. Keller* v. *Criminal Court of Marion County,* (1974) 262 Ind. 420, 317 N.E.2d 433, we retreated somewhat

from the statement quoted above from the *Bernard* case and allowed a breadth of discovery we previously would not have permitted. The question here is not whether the identity of the witness and his information concerning the case were discoverable. Under the *Keller* case, clearly they would have been. But, were they included in the order? We believe that the State could not properly be involuntarily subjected to a general order to disclose *all information relevant to the subject matter or which may in any manner aid the accused in the ascertainment of the truth,* because such an order would place too great a burden upon it—a burden to assess and reassess its information, from time to time, and to anticipate and speculate constantly as to the relevance of bits of information and the possible use the defendant might make of them. In effect, it would all but put the responsibility for the defense upon the State. It appears, therefore, that but for the State's failure to object, the discovery order would not have been so far reaching. But, the State having acquiesced in the order, it is in no position to dispute its application to information which would be encompassed by a reasonable interpretation of the order, and we, therefore, hold that the State was obligated to disclose the content of Vivian Reid's statement to Officer Borkowski, absent a protective order which the trial judge, in his sound discretion, might have issued upon the State's showing of a paramount interest in non-disclosure.

The State has proffered several reasons why it was not required to disclose the information in question, but we think they are not sound.

It does not appear material that the State, having agreed with the witness, Vivian Reid, to keep the information secret, did not intend to have Officer Borkowski testify. Although the rules of discovery applicable in civil proceedings are not applicable *as such* in criminal proceedings, the techniques of discovery embodied therein will often be applicable in criminal proceedings. *Antrobus*

*et al.* v. *State,* (1970) 253 Ind. 420, 423, 254 N.E.2d 873. "* * * It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Trial Rule 26 (B) (1).

Neither is it an excuse that the prosecutor was not personally aware of the information, inasmuch as the investigator was aware of it and fully recognized it as being pertinent to the case. In *Hale* v. *State,* (1967) 248 Ind. 630, 634, 230 N.E.2d 432, we said "We agree that the negligent destruction or withholding of material evidence by the *police* or the prosecution presents grounds for reversal on such theory." (Emphasis added). Also see, *Brady* v. *Maryland,* (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 215 and annotation in 34 ALR3d 24, 74. Only by charging the prosecution with knowledge held by the State's investigators can we be assured that the prosecutor, rather than the police, will be in control of the State's case.

Nor can we agree that it is material that the non-disclosed evidence was rebuttal only. Even if we disregard the potential for use of the information by the State in its case in chief—or even if we assume that the information was not come-by until after initial compliance with the order, it was incumbent upon the State to disclose it promptly thereafter, in view of the general terms of the order and the continuing nature of discovery orders. Trial Rule 26 (E).

Obviously all rebuttal evidence is not discoverable, because its relevance or even its existence may be unknown until a time that is too late to be of legitimate benefit to the opposing party. That rebuttal evidence is discoverable, however, is clearly established by *Wardius* v. *Oregon,* (1973) 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82, wherein the Supreme Court of the United States reversed and declared alibi statutes unconstitutional, in the absence of

fair notice that the defendant would have an opportunity to discover the State's rebuttal witnesses.

Having held that the defendant was entitled to be informed of the information known to Officer Borkowski, we must now determine if he is entitled to a new trial by reason of the trial court's denial of his motion to strike the officer's testimony, which brings us to a consideration of the remedies available when there has been a failure to comply with a discovery order.

> "It is the duty of the trial judge to regulate the conduct of those participating and to guide the proceedings to insure fairness and obtain economy of time and effort as is commensurate with the rights of both society and the criminal defendant." *Bernard* v. *State, supra.*

Discovery in criminal cases has come into being and has been developed in recognition of the above quoted principle. It is altogether appropriate, therefore, that the enforcement of discovery orders and the sanctions, if any, to be invoked be attuned to further such principle. Obviously, the trial judge is usually in the best position to determine what harm, if any, evolved from a violation, whether or not such harm can be eliminated or satisfactorily alleviated and the dictates of fundamental fairness. Absent clear error in his decision, it should not be overturned.

A party should not be disadvantaged by the opponent's failure to comply with the court's orders, and it is conceivable that the violation could be so misleading as to require exclusion of the concealed evidence, as being the only way to avoid a denial of the defendant's fair trial rights. Such a sanction might also be invoked, in an appropriate case, to deter bad faith violations. Absent such circumstances, however, a continuance appears most likely to be the appropriate remedy, assuming that the damage may, thereby, be averted without unreasonable delay or judicial waste.

The testimony of Officer Borkowski and that of Vivian

Reid is irreconcilable. If we assume that she spoke the truth, when she said that the defendant was with her at the time the crime was committed, advance knowledge of Borkowski's testimony would have enabled the defendant to investigate, with a view towards determining the officer's credibility as well as the possibility of an honest error. A continuance would have afforded him the same opportunity. If however, Officer Borkowski spoke the truth from the witness stand, Vivian Reid was not with the defendant at the time of the crime—a fact which the defendant was bound to know. In that event, the defendant was simply presenting a false alibi and was trapped by the failure of his perjured witness to warn him that she had previously told a conflicting story. Although the defendant doubtlessly would not have offered Vivian as an alibi witness, had he known of the secret between her and Borkowski, the damage to his defense cannot be said to have resulted from the State's failure to disclose the secret. Rather, it was caused by his tender of a perjured alibi.

There is but one other possibility that could bear upon the case. It is conceivable that Vivian Reid told the truth from the witness stand, when she testified that the defendant had been with her, but that she lied when she disavowed making the prior inconsistent statement to Borkowski and had also lied to Borkowski when she told him that the defendant had shot the decedent. In that unlikely event, the harm came not from the State's misconduct but from the failure of the defendant's own witness to make a full disclosure to him. Even so, we believe a continuance under such circumstances would have sufficed to enable the defendant to find the truth.

Under all of the circumstances, we believe the defendant was entitled to nothing more than a continuance to enable him, before proceeding further, to discover that which might have been previously revealed to him in response to the discovery order. But there was no motion made for a continuance.

There is yet another reason why it was not error for the trial court to overrule the motion to strike. A party may not permit evidence to go into the record and then ask that it be stricken and the jury admonished not to consider it when he finds that it is unfavorable to him. *Beeler* v. *State,* (1952) 230 Ind. 444, 104 N.E.2d 744; *Fidelity Phenix Fire Ins. Co.* v. *Purlee,* (1922) 192 Ind. 106, 135 N.E. 385; *Eckman* v. *Funderburg,* (1915) 183 Ind. 208, 108 N.E. 577.

An exception is properly made to the above rule when a party had no opportunity to object. Here however the witness, Vivian Reid, had been cross examined concerning her conversation with Officer Borkowski, and his subsequent appearance as a State's rebuttal witness could not have come as a surprise. Yet, the defendant not only made no objection to his testifying nor to any question asked of him, but he also cross examined him at length.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J., Hunter and Pivarnik, JJ., concur; DeBruler, J., concurs in result with opinion.

## OPINION CONCURRING IN RESULT

DEBRULER, J.—Appellant's counsel, through his questioning, amply demonstrated that Sgt. Chlebek had absolutely no understanding of the principles underlying the T.M.D.T., but simply followed the manufacturer's instructions. The question presented here is whether the "expert" must understand and be capable of explaining the underlying principles to be qualified to describe a test he had performed and draw conclusions therefrom. Sergeant Chlebek knew how to perform the test, but did not know why the test was valid; in effect the absent manufacturer of the testing kit is the "expert" who vouches for the test's validity and informs the jury that the "blackish purplish" glow observed by Sgt. Chlebek on appellant's hand

meant that the hand had recently come in contact with a metal object. Chlebek could not identify the substance he sprayed on appellant's hand other than to state that it was a reagent. Absent a demonstration to the satisfaction of the court that a newly developed test such as this one produces reliable results which can be correctly interpreted by a trained technician, I believe it is error to permit the technician to state a conclusion from some manufacturer's manual.

However, under the circumstances of this case the erroneous admission of Sgt. Chlebek's testimony was harmless and does not warrant reversal. The purpose of this scientific evidence was to provide a fact to aid the jury in inferring that appellant had recently held a gun in his hand. In this case appellant shot Wesson before a group of people outside of Jelly's Bar in an argument over the loss by appellant of $40.00. At least three of the onlookers testified at the trial that appellant shot Wesson with a pistol which he held.

NOTE.—Reported at 372 N.E.2d 1149.