Kevin **BALFOUR** and Tyrone
Clay, Appellants,

v.

**STATE** of Indiana, Appellee.

No. 680S170.

Supreme Court of Indiana.

Nov. 18, 1981.

Jack Quirk, Muncie, for appellants.

Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellants and a third defendant were indicted for murder. All were tried together, however, the third defendant was acquitted. Appellants were found guilty and sentenced to forty (40) years imprisonment each.

The record shows the following facts. On February 8, 1979, there was a disturbance at Sam's Pool Hall in Muncie, Indiana. The decedent, Pleas Whigum, had been verbally and physically harassing various patrons including defendant Balfour and some of his friends. Sometime after 4:00 P.M. one John Clay approached Whigum and began to argue with him about his earlier behavior, whereupon Whigum drew a pistol out of his coat pocket and shot Clay twice. At that point the two defendants, who were backers of Clay, drew out pistols and began firing at Whigum. Whigum died of a gunshot wound in the chest. A seventeen (17) year old bystander, Donald Bond, died of a gunshot wound to the head. There was evidence that each of the fatal shots was fired from a different gun.

Appellants claim the trial court erred in allowing a previous inconsistent statement of witness Charles Bond into evidence. In the statement, Bond said he witnessed the entire incident from inside the pool hall; however, on direct examination he stated that just prior to the shooting he had left the hall and was on his way back when the shooting started.

At that point the State questioned Bond about his prior statement. The witness responded that he made the statement based on what others had told him shortly after the shooting occurred. Defense counsel then objected to the admission of the statement on hearsay grounds. The trial court overruled the objection.

Appellants contend the trial court allowed into evidence an out-of-court asser-

tion that depended upon the credibility of others who were not present and not subject to cross-examination. In permitting the statement into evidence, the trial court instructed the jury: "[T]he first statement ... is being read to you only, not for the purpose of the truth of statements made therein, but necessairly [sic] this is a fact for you to determine as you see fit." Appellants claim it was error to tell the jury to consider the statement for its inherent truth.

In *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482, this Court held a prior inconsistent statement of a witness present in the courtroom and subject to cross-examination is admissible not only for impeachment purposes but for substantive proof as well. In *Carter v. State*, (1977) 266 Ind. 196, 361 N.E.2d 1208, *cert. denied*, 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142, and *Torrence v. State*, (1975) 263 Ind. 202, 328 N.E.2d 214, we held repudiation of a prior inconsistent statement does not invalidate the *Patterson* rule.

In *Cook v. State*, (1978) 269 Ind. 227, 379 N.E.2d 965, a video taped prior inconsistent statement was admitted for substantive proof under the *Patterson* rule even though the witness tried to repudiate the statement by asserting he had no personal knowledge of the events in question. The situation in the case at bar is the same as in *Cook*, *supra*. The witness in his court testimony claimed he had no firsthand knowledge of the events in question at the time he made the statement.

In *Samuels v. State*, (1978) 267 Ind. 676, 679, 372 N.E.2d 1186, 1187, this Court observed that possibly *Patterson* had been used as a mere substitute for available in-court testimony. However, the court ruled such was not the case in *Samuels* and we further observe it is not the situation in the case at bar.

■ We do not interpret the trial judge's instruction to the jury as telling them they could consider the statement for its inherent truth as claimed by the appellants. In fact, the trial judge specifically told them they were hearing the statement "not for

the purpose of the truth of statements made therein." It was obvious the trial judge was allowing the jury to hear the prior inconsistent statement for the sole purpose of furnishing them with the total factual situation in order that they might make the determination as to whether the witness was telling the truth in court or whether he had spoken the truth in his prior inconsistent statement.

■ Under the circumstances, the jury might well have disregarded the prior inconsistent statement entirely. We therefore repeat our holding that, when a witness repudiates a prior inconsistent statement and such repudiation does not appear in the statement itself, it is proper for the trial court to admit the prior inconsistent statement in order that the jury may make a determination as to the true situation of the witness's knowledge of the facts claimed.

Appellants next claim the trial court erred in the admission of another prior inconsistent statement, that of State's witness Oscar Ross. In Ross's statement he said he saw defendant Clay firing his weapon. When called as a witness at the trial he stated he was not sure if Clay had a weapon. For the reasons above stated, the trial court did not err in allowing the prior inconsistent statement to be presented to the jury.

■ Appellants also argue the admission of Ross's statement was an improper impeachment of the State's own witness. In *Stone v. State*, (1978) 268 Ind. 672, 377 N.E.2d 1372, this Court held prior inconsistent statements of a witness are admissible under the *Patterson* rule for impeachment purposes, when the witness becomes a hostile witness to the State's interest. We therefore hold the admission of Ross's statement was a proper impeachment of the State's own witness.

Appellants claim the trial court erred in refusing to allow them to cross-examine Ross concerning a family dispute that occurred prior to the shooting, which they claim may have affected the veracity of his

prior statement. Ross was permitted to testify that his brother had been shot in an unrelated incident and that his concern over that shooting may have affected his recollection in reporting the shooting in the case at bar. The court sustained the State's objection when defense counsel tried to delve further into the background of the incident involving the witness's brother.

The scope of cross-examination lies within the sound discretion of the trial court and reversal is required only where clear abuse of discretion is found. *McNew v. State*, (1979) Ind., 391 N.E.2d 607; *Inman v. State*, (1978) Ind., 383 N.E.2d 820, *cert. denied*, 444 U.S. 855, 100 S.Ct. 114, 62 L.Ed.2d 74; *Ringham v. State*, (1974) 261 Ind. 628, 308 N.E.2d 863. We fail to see how the submission of testimony regarding the details of the incident in which the witness's brother was shot would have shed any further light on the facts to be decided by the jury in this case.

The trial court did allow the jury to consider the fact of the shooting in weighing the accuracy of Ross's testimony. We hold, however, that the trial court did not abuse his discretion in stopping the cross-examination at that point. This Court has previously stated, "To allow the cross-examiner in a criminal case carte blanche, would subject the trial courts to an inundation of irrelevant matter which would be confusing to judges and juries and would cause undue prolongation of the trial." *Logston v. State*, (1977) 266 Ind. 395, 363 N.E.2d 975.

Appellants next claim the trial court erred in permitting a Muncie police officer to testify as an expert witness concerning the administration and evaluation of a trace metal test performed on the appellants. The test was performed by the witness on the appellants shortly after the shooting to determine whether they had handled metal objects and whether they had fired a firearm within a recent space of time.

An expert is one who by reason of education or special experience has knowledge respecting a subject matter about which persons having no particular training are incapable of forming an accurate opinion or making a correct deduction. Section 13, McCormick on Evidence, 29–30.

In *Reid v. State*, (1978) 267 Ind. 555, 372 N.E.2d 1149, this Court approved of the qualification of an expert witness on the trace metal test when the witness's training consisted of attendance at a seminar conducted by the manufacturer of the chemical used in the test. He also had experience of fifteen administrations of the test.

In the case at bar, the witness has four hours of laboratory training and has administered the test "on probabaly [sic] 98% of those involved in the violent deaths since the schooling, where firearms have been used." There is ample evidence in the record from which the trial judge could determine that the witness was qualified to give the test and evaluate its result by virtue of his experience.

Appellants claim the "verdict is contrary to the evidence." Although there is conflicting evidence in the record before us, there nevertheless is ample evidence from which the jury could find the existence of each of the elements of the crime beyond a reasonable doubt. This Court will not weigh the evidence or judge the credibility of the witnesses. Where, as in the case at bar, there is substantial evidence from which the jury could have found the defendant guilty, the conviction will not be disturbed. *Himes v. State*, (1980) Ind., 403 N.E.2d 1377; *Lock v. State*, (1980) Ind., 403 N.E.2d 1360.

The trial court is in all things affirmed.

HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in part and dissents in part with separate opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, concurring in part and dissenting in part.

Upon consideration of the evidence upon which the trier of fact could have determined appellant Tyrone Clay guilty of murder, I find the verdict as to him unsupported, and therefore respectfully dissent.

The strongest evidence against Clay is that he was present at the time of the murder at the pool hall, that he was a close companion of the two Balfours, that he shared their anger towards the victim, and that he had at sometime held a metal object in his hand. I cannot regard this as circumstantial evidence from which a reasonable trier of fact could conclude to a certainty beyond a reasonable doubt that Clay held a weapon in his hand at the time of the shooting and discharged it, or aided and abetted others in so doing. There is furthermore no direct evidence that he did so. The pre-trial statement of one witness admitted as part of the State's case-in-chief does contain the express assertion that Clay held a gun and discharged it. This statement was admitted in evidence subject to the trial court's express admonition which was:

> "Alright, Ladies and gentlemen, the Court did overrule the objection to the reading of the first statement that is being read to you only, not for the purpose of the truth of statements made therein, but necessarily this is a fact for you to determine as you see fit. It is being introduced for the purpose of showing a prior inconsistent statement and you may judge the fact as you hear the testimony from the stand. With that you may allow it to be read."

I take this admonition to limit the use of the statement by the jury to determining credibility. Its content is therefore not part of the evidence which this Court can consider as supporting the verdict of guilty. *Webster v. State*, (1980) Ind., 413 N.E.2d 898. I would therefore reverse the conviction of Clay and order a retrial as to him. I concur however in the affirmance of the conviction of Balfour.

PRENTICE, J., concurs.