William M. CRAFTON, James L. Hopkins, and Randy H. Smith, Appellants (Defendants Below),

v.

STATE of Indiana, Appellee.

No. 2–880A269.

Court of Appeals of Indiana, Second District.

June 28, 1983.

Grant W. Hawkins, Samper, Hawkins & Atz, Indianapolis, for appellant William M. Crafton.

Nile Stanton, Indianapolis, for appellants James L. Hopkins and Randy H. Smith.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

William M. Crafton, James L. Hopkins and Randy H. Smith appeal their convictions for robbery[1] and confinement.[2] All Appellants present the following issues:

I. Whether the Appellants were denied fundamental fairness by prosecutorial misconduct; and

II. Whether Appellants were denied effective assistance of counsel.

In addition, Crafton raises the following issues:

III. Whether the trial court erred in allowing State's witnesses to testify regarding prior statements of other prosecution witnesses; and

IV. Whether the evidence is sufficient to sustain the verdicts.

We affirm.

The evidence viewed in the light most favorable to the State reveals that in the early evening of December 31, 1979, four men wearing ski masks knocked on the back door of Lawrence Barker's residence in In-

---

1. I.C. 35–42–5–1 (Burns Code Ed.Repl.1979).

2. I.C. 35–42–3–3 (Burns Code Ed.Repl.1979).

dianapolis. Barker testified that the men were carrying three shotguns and an ax, and that one of them forced him to lie down on the floor while another started chopping at a safe in a bedroom closet. While there was conflicting testimony from other witnesses to the effect that Barker had been unable to describe or identify his assailants, Barker testified that he was able to look up underneath one of the ski masks and thereby recognized Appellant Smith. He further testified that he recognized the shoes one of the assailants was wearing as belonging to Smith. Coins from the safe were taken, along with a rifle, a guitar, and money from Barker's wallet.

Immediately prior to the robbery, Barker had received a call from his girlfriend, Cecilia Cooper, and agreed to pick her up. After Barker's assailants left, Cooper called back asking why Barker had not yet arrived. When Barker told her that he had been robbed, Cooper said that at a party earlier that evening she had heard Appellants discuss robbing Barker. Barker testified that Cooper's descriptions of Appellants and their apparel that evening fit his assailants. On January 9, 1980, Barker identified police photographs of Smith and Hopkins as two of the four intruders.

Cooper testified that at approximately 4:30 p.m. on December 31, 1979, she was at a party at the home of Crafton and his girlfriend, Elizabeth Jennings. Cooper testified that in the Appellants' presence she had a conversation with Debbie Epperly, Appellant Smith's girlfriend, regarding the safe in Barker's house, where Cooper was also living. Epperly asked Cooper if she had ever thought about "ripping Larry [Barker] off," and then Appellant Smith suggested that Hopkins and Steve Banks could do it because Barker did not know them. Cooper left the party with Larry Smith (no relation to Appellant Smith), and after stopping at several locations, telephoned Barker and arranged for him to pick her up. She phoned him again when he did not come to pick her up and learned that he had been robbed.

State's Exhibit 12(c), an edited tape recording of a statement by State's witness Charles Cleary, was played in court over defense objection. In the statement, Cleary said that he was at Crafton's house the day after the robbery when Crafton and Appellant Smith began talking about a robbery they had pulled and said that they had taken a gun and some coins. They showed him the gun: a 22-caliber rifle designed to look like an M–16.

State's Exhibit 13, a typed statement given by Debbie Epperly to Indianapolis Police Department Detectives Lloyd Jones and Clifford Adams on January 12, 1980, was admitted over objection. In the statement, Epperly admitted accompanying Appellants and Steve Banks to Barker's house on December 31, 1979, and knocking on the door. While the four men entered the house, Epperly waited in the car. She stated that they returned with a guitar, a gun, and a sack of money.

State's Exhibit 11 was identified as a tape recording made by Barker of a phone conversation he had with Epperly and Jennings. In the conversation both women blamed Cooper for setting up the robbery, and claimed that nothing would have happened if "people" had not been drunk. When questioned at trial about the conversation, Epperly recalled making some statements but not others. She claimed that she told Barker she had a part in the robbery in order to go along with what the police had told her to say, so that she would not be rearrested. Jennings testified that she could not remember who she was talking about (as having robbed Barker) during the phone conversation, but that it was not the Appellants. The portion of the tape containing the conversation between Jennings and Barker was admitted over objection. When asked to explain her part of the conversation, Jennings testified that she was trying to get Barker to drop the charges.

I.

Appellants argue that they were denied fundamental fairness by prosecutorial mis-

conduct; specifically (A) by the State's withholding from discovery State's Exhibit 11, the tape of a conversation between Lawrence Barker, Debbie Epperly, and Elizabeth Jennings; and (B) by the State's withdrawal of immunity from defense witnesses who were previously given immunity when testifying for the State. Appellants Smith and Hopkins also allege that the State engaged in misconduct by impeaching its own witnesses.

In *Maldonado v. State* (1976) 265 Ind. 492, 355 N.E.2d 843, 848, our Supreme Court stated the procedure to be followed in ruling on allegations of prosecutorial misconduct:

> "1. The Court first determines that the prosecutor in fact engaged in misconduct. This determination is made by reference to the case law and the disciplinary rules of the Code of Professional Responsibility as adopted in this State. *See Swope v. State,* (1975) 263 Ind. 148, 325 N.E.2d 193.

> 2. The Court then considers whether the misconduct, under all the circumstances, 'placed [the defendant] in a position of grave peril to which he should not have been subjected.' (Citations omitted.) The 'grave peril' standard does not require the Court to find that the misconduct determined the outcome of the trial. *White [White v. State,* 257 Ind. 64, 272 N.E.2d 312], *supra,* at 272 N.E.2d 319–20. This is the same standard which *White* mandates trial courts to observe in ruling on mistrial motions.

> 3. Whether the misconduct results in subjecting the defendant to 'grave peril' is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct. *Swope v. State, supra.*

> 4. Even if an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal may still result. (Citations omitted.)" 265 Ind. at 498–99, 355 N.E.2d 843.

Thus, we must first determine whether the acts alleged constituted prosecutorial misconduct.

## A.

### DISCOVERY PRODUCTION OF TAPE RECORDING

On February 20, 1980, Appellants filed individual motions to produce. Each motion requested that the State provide for examination and/or copying "all statements of any witnesses interviewed . . .", and "All books, papers, documents, tangible objects and copies or portions thereof within the possession, custody or control of the Marion County Prosecutor . . ." The motions were granted on February 20, and the State was ordered to comply within fifteen days.

On March 4, 1980, the State acquired a tape from Barker which he had made during a telephone conversation with Epperly and Jennings on January 13, 1980. Deputy Prosecutor Sells notified defense counsel William Keithley shortly after he learned of the tape's existence. Keithley was furnished a transcript of the tape on March 6 and a copy of the tape was tendered on March 7, but Keithley was out of town and his office refused to accept it. Sells again tendered a copy of the tape around 9:00 A.M. on the morning of trial, March 10 but Keithley refused it, although he accepted it a few hours later.

On the second day of trial Keithley objected to the tape's admission into evidence, claiming that the transcript he was given was "totally unreliable," and because of the delay in getting the tape to him. However, when the court asked him how he was prejudiced by the purported delay, Keithley responded: "I don't know." The court overruled the objection, noting that the defendants had neither requested a continuance nor shown how they had been prejudiced by the delay.

Appellants argue that the tape should have been excluded because the State's noncompliance with the discovery order constituted prosecutorial misconduct.

In *Long v. State* (2d Dist.1982) Ind.App., 431 N.E.2d 875, we reversed the trial court's denial of the defendant's motion for mistrial because of the State's abuse of discovery. Long had filed a pretrial discovery request for any written or recorded statement made by himself or a co-defendant. On the day before trial, the prosecutor learned of the existence of a written, signed statement given by Long to a police officer shortly after arrest. However, the prosecutor failed to notify Long or his counsel about the statement; instead, the prosecutor waited until after Long had testified on direct examination before using a portion of the statement to lay a foundation for impeachment purposes. Finding that the State's failure to comply with the defendant's specific request for discovery constituted prosecutorial abuse of discovery, we considered the adequacy of the remedy provided by the trial court. We noted that while a continuance is generally the appropriate remedy for failure to comply with a discovery request,

"... the prejudicial circumstances surrounding the abuse occasionally negate the continuance as an effective remedy. In addition, there are times when the misconduct is so flagrant it simply cannot be tolerated and consequently as a policy matter the continuance cannot be deemed an adequate remedy because it fails to serve as an adequate deterrent to the conduct.

Such is the situation here. The conduct of the State simply cannot be tolerated. By its affirmative deception it concealed a statement to which Long was absolutely entitled, regardless of whether Long should have known of its existence." 431 N.E.2d at 877.

In *Long,* a continuance would have been an ineffective remedy because Long had already waived his constitutional right to remain silent and to not testify. A continuance could not have provided him the opportunity to reconsider that decision in light of the prior statement which could be used to impeach him. We held that the State's misconduct violated Long's right to a fair

trial, due process, and effective assistance of counsel. 431 N.E.2d at 878.

Unlike the "affirmative deception" practiced by the State in *Long,* in this case Sells notified Keithley soon after he became aware of the tape's existence. Sells did not attempt to conceal the tape. Here a continuance would have afforded defense counsel additional time to listen to the tape prior to its admission into evidence.

■ Sanctions for failure to comply with discovery orders are discretionary, *Popplewell v. State* (1978) 269 Ind. 323, 381 N.E.2d 79, 82, and cannot be overturned absent clear error. *Reid v. State* (1978) 267 Ind. 555, 372 N.E.2d 1149, 1155; *Murray v. State* (1982) Ind., 442 N.E.2d 1012, 1016. Suppression of the evidence is a proper remedy only where the State's violation is so misleading or demonstrates such bad faith that exclusion is essential in order to avoid a denial of a fair trial to the defendant, *O'Conner v. State* (1980) Ind., 399 N.E.2d 364, 367; *Upshaw v. State* (3d Dist.1976) 170 Ind.App. 206, 352 N.E.2d 102, or to deter bad faith violations. *Reid v. State, supra.* Absent such circumstances, however, a continuance is the most appropriate remedy. *O'Conner v. State, supra.*

■ Appellants have failed to demonstrate that the State acted in bad faith, or as in *Long,* deliberately. Soon after he became aware of the tape's existence, Deputy Prosecutor Sells notified defense counsel, furnished a transcript of the tape within two days, and tendered the tape itself within three days after he received it. The State neither violated the discovery order, nor failed to exercise due diligence in complying with it. Therefore, the trial court did not abuse its discretion in denying appellants' motion to suppress the tape. *See Harris v. State* (1981) Ind., 425 N.E.2d 112.

We also conclude that appellants were not placed in the position of choosing between going to trial ill-prepared and asking for a continuance, thus waiving their right to an early trial. First, part of the blame for any claimed lack of preparation must rest with Keithley, whose office refused to accept a copy of the tape and who did not

even listen to the tape once he had accepted a copy of it. Furthermore, a continuance of a day or two would not have unduly deprived Appellants of their "right to an early trial." Hopkins and Crafton moved for an early trial on January 28, 1980. Indiana Rules of Procedure, Criminal Rule 4(B)(1) provides that a defendant who has moved for an early trial must be discharged if he is not brought to trial within seventy days of the motion. Trial began March 10, 1980 which was nearly a month before the end of the seventy-day period. As defense counsel himself conceded, appellants suffered no prejudice nor were placed in a position of grave peril by the prosecutor's conduct. We therefore reject appellants' claim of prosecutorial misconduct on this ground.

### B.

### PROSECUTOR'S COMMENT CONCERNING ABSENCE OF IMMUNITY FOR DEFENSE WITNESSES

Immunity was granted pursuant to I.C. 35–6–3–1 [3] to witnesses Debbie Epperly and Elizabeth Jennings prior to trial, and to Charles Cleary and Larry Smith during the State's case-in-chief. Smith and Jennings also testified during the Appellants' case-in-chief.[4]

Deputy Prosecutor Sells stated during the State's case-in-chief that Larry Smith had immunity "on everything that he testifies to here today. In other words we will not use what he testifies to today against him." After a short recess, Sells stated, "Judge, I want to qualify that immunity a little bit. I want to make it in accordance with the statute. I don't think I'm authorized to grant any immunity in excess of the statute."

Although defense counsel Keithley extensively cross-examined Smith, Keithley called Smith as a defense witness. Keithley proceeded to question him about a meeting Smith had with Barker on January 4 or 5, 1980. Smith readily responded to his questions, but when Keithley asked, "How did it occur that you went to Larry Barker's house?", the following colloquy transpired:

"*Mr. Smith:* Excuse me. Where's my lawyer—attorney that I'm supposed to have?

*Court:* Did you wish to—was there an immunity grant in this instance?

*Mr. Sells:* He has no immunity now, Judge.

*Court:* Do you wish to consult with counsel prior to answering—

*Mr. Smith:* —yes, sir. Well, if you know, he says that immunity isn't granted—

*Court:* —it is not—

*Mr. Smith:* —he said it is not, then I'd be jeopardizing myself and another companion of mine if I answered this question.

*Court:* You wish to take the Fifth Amendment then?

*Mr. Smith:* I don't understand the Fifth Amendment.

*Court:* That means you don't have to testify against yourself or make any statement against yourself which might be incriminating to you. Do you wish to consult with counsel before answering that question? That's my understanding?

*Mr. Smith:* Yes, sir." Record at 555–56.

---

**3.** I.C. 35–6–3–1 (Burns Code Repl.1979) provides in relevant part:

"Any witness, in any criminal proceeding, before a court or grand jury, who refused to answer any question and/or produce any evidence of any kind on the ground that he may be incriminated thereby, may be ordered by the court to answer any question and/or produce any evidence upon a written request by the prosecuting attorney: Provided, That the witness shall be provided with timely notice and a separate hearing on the merits of the order. Unless the court finds that the issuance of the order would be clearly contrary to public interest, the witness shall comply with the order of the court . . . ." Repealed effective September 1, 1982 (Burns Supp. 1982).

**4.** Appellant Hopkins notes that his Motion to Correct Error indicates an attempt was made to call Debbie Epperly as a defense witness but that she refused because of the prosecutor's "repeated" withdrawal of immunity; however, this assertion is not supported by affidavits.

Mr. Smith was later recalled to the stand, and informed the court that he was willing to answer Keithley's question. The question concerning why he went to Larry Barker's house on January 4 or 5 was repeated. Smith responded: "I went over there to purchase a bag of marijuana." Keithley had no further questions.

Prior to direct examination by Keithley, Jennings was informed by Sells that she did not have immunity because the prior grant of immunity was only extended to her testimony as a State's witness. The Court remarked, "Well, my understanding is Mr. Sells, once you grant immunity on a given case you've granted immunity as to testimony in that particular case. You can't pick and choose—" (Record at 560) (Mr. Sells): "—only as [to] her testifying as a States witness." (Court): "All right, you can make [that] assertion, sir, and we'll see what happens...." Record at 560–61. When asked by Keithley if she had heard what Sells said, Jennings replied, "Yes. I'd like my attorney though." Record at 561. The court directed Keithley to proceed with questioning. Keithley asked her if she would like to explain any part of her telephone conversation with Barker, which was the subject of State's Exhibit 11. She replied: "I was talking to Larry about telling him how Cecilia [Cooper] had anything to do with it. I was telling him—I don't know. I'd like to have my attorney here. I don't know what to say now." Record at 564. The Court reminded her that the question was whether she wanted to explain the conversation, to which she could answer yes or no. Jennings replied in the negative. No further questions were asked of her.

Appellants contend that the withdrawal of immunity from Larry Smith and Jennings was a "legal nullity, substantially prejudicial ..., and a deliberate attempt by the prosecutor to not only intimidate witnesses, but also to withhold exculpatory evidence from the jury," (Brief for Appellant Smith at 17; Brief for Appellant Hopkins at 15), in violation of EC 7–13 of the Code of Professional Responsibility, which provides in part that a prosecutor "should not intentionally avoid pursuit of evidence merely because he believes it will damage the prosecution's case or aid the accused." As a result of the alleged prosecutorial misconduct, appellants contend that the withdrawal of immunity left the jury to speculate upon the reason for the withdrawal and what the testimony would be if the prosecutor had not withdrawn immunity. They assert that Sells "effectively attacked defense-testimony by unsound and unethical means and in so doing limited the jury's ability to assign their own ideas of merit and credibility to the testimony." Reply brief for Appellants Smith and Hopkins at 2.

We are not directly concerned with whether the State's attempt to withdraw immunity during trial was valid. Rather, we are concerned with appellants' argument that reference in midtrial, to absence of immunity previously conferred was prejudicial.

■ Although there is authority which authorizes, and in some instances compels, the grant of immunity to defense witnesses (see Annot. 4 A.L.R. 4th 617 at 631 et seq.) Indiana law is to the contrary. In *Walters v. State* (1979) Ind., 394 N.E.2d 154, 157, our Supreme Court stated:

"The granting of immunity is somewhat analogous to plea-bargaining in that the State must often use such means with reluctant, but essential witnesses. The State alone has the responsibility of prosecuting crimes. To meet that responsibility, the State, not the defendant, must have the authority to grant immunity.... The statute (Ind.Code § 35–6–3–1) which permits the State to grant immunity is for the benefit of the State; the State need not grant immunity to a defense witness merely because the failure to do so possibly tarnishes the credibility of the witness."

In *Walters,* however, the immunity was denied to defense witnesses different than those prosecution witnesses who had received immunity.

Here, although the grant of immunity may have been intended by the prosecution to extend only to questions asked by the State upon direct examination and by defense attorney Keithley upon cross-examination, the grant was not so limited.

With respect to witnesses Smith and Jennings, the grant of immunity related to answers "to questions in the trial of this cause" (Record at 125) not merely to questions asked during presentation of the State's case-in-chief or rebuttal.

■ Having granted unlimited immunity to a particular witness who has testified, the State, without demonstrating good cause, may not later retract the immunity. *See In Re Kelly* (1972 E.D.Ark.) 350 F.Supp. 1198; *Hammers v. State* (1978) 263 Ark. 378, 565 S.W.2d 406; *People v. Brunner* (1973 2d Dist.Cal.) 32 Cal.App.3d 908, 108 Cal.Rptr. 501; *State v. Ward* (1932) 112 W.Va. 552, 165 S.E. 803, 85 A.L.R. 1175. It makes no difference that the particular witness had completed his testimony on behalf of the State and is subsequently called by the defense. The immunity had attached, and we shall not permit the State to pick and choose the various times during a trial when immunity will or will not be effective.

■ Nevertheless, the erroneous comments of the prosecutor relative to the absence of immunity when Smith and Jennings testified on behalf of the defense are not cause for reversal. The record fails to support appellants' allegation that the prosecutor's comments were substantially prejudicial or placed them in a position of grave peril. Larry Smith voluntarily responded to defense counsel's question after having consulted his attorney, despite the prosecutor's refusal to extend his immunity to his testimony as a defense witness. Thus, contrary to appellants' assertion, the prosecutor's comments did not "intimidate" Smith and thereby preclude him from testifying; indeed, the comments appear to have had no impact upon Smith's testimony.

Moreover, while Jennings would not explain her conversation with Barker, this fact does not compel a conclusion that she had been intimidated nor that the prosecutor was deliberately attempting to intimidate her or to withhold exculpatory evidence from the jury. Appellants have not demonstrated that Jennings would have provided exculpatory evidence but for the prosecutor's conduct. More importantly, defense counsel made no offer of proof to show what exculpatory evidence would have been elicited from Jennings but for the prosecutor's alleged "withdrawal" of immunity. We find no reversible error.

## C.

### IMPEACHMENT AS PROSECUTORIAL MISCONDUCT

■ Appellants Smith and Hopkins contend that the "constant" impeachment by the State of Charles Cleary, Debbie Epperly and Elizabeth Jennings, while testifying as State's witnesses, causing the jury to disbelieve the in-court statements and to base its decision on "police statements made under duress and coerced by threat" (Brief for Appellant Smith at 24; Brief for Appellant Hopkins at 22) constituted prosecutorial misconduct.

Impeachment of a party's own witness is governed by I.C. 34–1–14–15 (Burns Code Ed.1973) which provides:

"The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right; but he may, in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony."

The questioning of these witnesses was within the permissible limits of the statute. We find no prosecutorial misconduct in this regard.

## II.

### EFFECTIVE ASSISTANCE OF COUNSEL

■ Appellants claim that they were denied effective assistance of counsel due to

1) a conflict of interest stemming from trial counsel's representation of the three co-defendants; 2) counsel's lack of response to the purported withdrawal of immunity from certain defense witnesses; and 3) his failure to make certain objections and preserve various issues for review. Although appellants argue this issue in their respective briefs, they did not make such allegation in their motions to correct error. The issue has not been properly preserved for our review and it is therefore waived. *Certain v. State* (1973) 261 Ind. 101, 300 N.E.2d 345, 346; *Wright v. State* (2d Dist.1974) 162 Ind.App. 233, 319 N.E.2d 168.

### III.

### ADMISSION OF OUT–OF–COURT STATEMENTS PURSUANT TO PATTERSON RULE

■ Although Crafton independently challenges the admissibility of the prior statements of four witnesses, he failed to include such allegation in his motion to correct errors. Therefore, he has not preserved the issue for our review. *Dew v. State* (1982) Ind., 439 N.E.2d 624. Even if it were otherwise, the admission of the out-of-court statements of Charles Cleary, Larry Smith, Debbie Epperly and Elizabeth Jennings does not warrant reversal.

### A.

### CLEARY'S PATTERSON STATEMENT

■ On direct examination, Cleary was asked to identify State's Exhibit 12, a transcript of a tape-recorded statement in which Cleary told Officers Jones and Adams that the defendants or some of them admitted

that they had robbed Barker on December 31, 1979. Cleary replied that it was "A statement for this case here" and when asked who gave the statement, he answered "I'm not sure. I think I did, but I ain't sure" explaining "... I was high or something when I got arrested for this robbery. I'd been on drugs for about two years." After a brief cross-examination which established that Cleary had been the first person arrested in connection with the robbery he was excused and Detective Adams took the stand.

Adams identified Exhibit 12, in four pages, as a statement he had taken from Cleary on January 10, 1980. The State offered Exhibit 12A which was Exhibit 12 as transcribed and typed with redactions. The jury was excused. Defense counsel objected to the statement on hearsay grounds. The objection was sustained apparently because the State had not brought out the contents of the statement while Cleary was on the stand, thereby limiting defendants' cross-examination of Cleary concerning the statement.

The jury returned and the State recalled Cleary. When the State attempted to elicit details of the conversation which was the subject of the statement, Cleary's memory was somewhat faulty. Alluding to two statutes[5] the State proceeded to read from the statement, asking Cleary whether he remembered being asked the questions and giving the responses. Cleary's responses included "I might have," "I'm not sure," and that he was "loaded" or "high" when the statement was made. The State later asked him "You're not denying that you said these things? A. I'm saying I don't

---

**5.** I.C. 34–1–14–15 (Burns Code Ed.1973) states:

"Party producing not to impeach—Exception.—The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party shall have this right; but he may, in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony."

I.C. 34–1–15–1 (Burns Code Ed.1973) states:

"Impeachment when witness says he does not 'recollect' having made a certain state-

ment.—When a witness, whether a party to the record or not, is cross-examined to lay the foundation for his impeachment by proof of an act or statement inconsistent with his testimony, and is asked if he did not do the act or make the statement, and he answers that he does not recollect having done the act or made the statement, the party thus laying the foundation for impeachment shall have the right to introduce evidence of the act or statement in the same manner as if the witness had answered that he had not done the act or made the statement."

know if I did or not. Like I told I was high. I was on drugs. I've been on drugs for two years."

State's Exhibit 12B (a tape recording of the statement) was played in the jury's absence. When asked whether the tape recording refreshed his recollection of the conversation he had with Detective Adams and Jones, Cleary responded that it did not and that he was not sure that it was his voice on the tape. Before the jury, Cleary testified that the recording had failed to refresh his recollection and that he did not remember making the statement. Detective Adams was then recalled to the stand, identified State's Exhibit 12B as a tape recording of a statement given by Cleary on January 11, 1980. Adams testified that he, Sergeant Jones and Charles Cleary were present when the tape was made. Exhibit 12C, the tape with redactions, was admitted over defendants' objections that "the statements were made out of the presence of the defendants. There's been no showing at this time of their reliability."

Relying upon *Patterson v. State* (1975) 263 Ind. 55, 324 N.E.2d 482, the State argues that the taped statement was admissible because Cleary was present at trial and available for cross-examination. Citing *Carter v. State* (3d Dist.1980) Ind.App., 412 N.E.2d 825, Crafton argues that Cleary's extrajudicial statement was not admissible as substantive evidence. Our Supreme Court in *Watkins v. State* (1983) Ind., 446 N.E.2d 949, recently placed its imprimatur upon appellants' conclusion that when the witness (out-of-court declarant) denies having made the prior statement or denies having any memory of having done so, the statement is not admissible as substantive evidence under *Patterson*. Although the State's purpose in introducing Cleary's prior statement is not clearly discernible from the record, even if it were assumed that this statement had been used substantively rather than for impeachment, we find no reversible error in the trial court's admission of this statement.

Whether Cleary *denied* having given the January 10 statement, professed no memory of having done so, or whether he essentially admitted it, was for the trial court to determine from all of his testimony, and "not merely from isolated bits and pieces." *Watkins v. State, supra,* 446 N.E.2d at 960. In response to some questions, Cleary professed memory lapses and appeared to vacillate; on the other hand, he identified the transcript as a "statement for this case here;" stated that he was neither unequivocally denying nor admitting having made the statement; and agreed that the statement was probably his. The trial court was in the superior position of being able to observe Cleary's demeanor, and of evaluating whether he was "fabricating his denial or feigning his loss of memory." *See Carter v. State, supra,* 412 N.E.2d 825, 832. Although Cleary may, to some extent, have given conflicting testimony as to whether he had made the January 10 statement, such conflicts were within the trial court's purview to resolve in determining which, if any, portions of the January 10 statement were admissible. *See Watkins v. State, supra.*

In reviewing the trial court's finding, we neither reweigh the evidence nor judge the credibility of the witness. Based on a "fair interpretation" (*see Watkins v. State, supra*) of the entire record, we find that there was substantial evidence of probative value from which the trial court could have reasonably inferred that Cleary made the out-of-court statement. *See Peckinpaugh v. State* (1983) Ind., 447 N.E.2d 576.

### B.

### LARRY SMITH'S PATTERSON STATEMENT

During direct examination, Larry Smith admitted that he had discussions with defendants Crafton or Smith about the robbery around January 12, 1980. Larry Smith further testified that he recalled seeing the prosecutor at the jail on March 7, 1980. The State asked him: "Do you recall telling us on that date that Michael Crafton—William Michael Crafton and Randy H. Smith, the Defendants, told you about this robbery

they had pulled?" Outside the jury's presence, defense counsel objected on two grounds: 1) that the State was attempting to impeach its own witness; and 2) that the State was attempting to elicit hearsay testimony. This colloquy ensued:

> "*Mr. Keithley:* Well, they were not made in the presence—there's no showing they were made in the presence of these Defendants.
>
> *Court:* It doesn't have to be. It's for purposes of impeachment. If he made a prior inconsistent statement—that's what he's asking him about, as I take it.
>
> *Mr. Sells:* And he's here for cross-examination and the *Patterson* and *Flewallen* problems as to what he said on the prior date, and it's a prior inconsistent statement. That's right, Judge." Record at 437.

After the court overruled the defense objection, the State repeated the question: "Do you recall telling Detective Adams and this other person and myself on ... March 7, 1980, over at the Marion County Jail that William Michael Crafton and Randall H. Smith had told you about this robbery on December 31, 1979, that they had pulled? A. No sir, I remember saying that they were being accused of this. That's what we talked about." Record at 440–41.

The State later called Detective Adams to the stand, and the following transpired:

> "Q. Did you hear Larry Smith testify, the brother of Deborah Smith Epperly, concerning a March 7, 1980, conversation that he had with yourself, Detective Jones and me over at the jail last Friday?
> A. Yes, sir, I did.
> Q. Okay. Tell the Court and jury what, in fact, he told us over at the jail.
> A. We talked to Larry Smith over at the jail and he told us that he knew about the robbery. He told us that the night that it happened that he had been drinking pretty heavily. He told us the same thing, that he'd left with Cecile Cooper. He said that the next day or the day after that, he'd talked to Mr. Crafton and Mr. Smith and they admitted the robbery to

him. He told us that he saw the gun on several occasions. This is the M16 rifle that's been reported as taken—
> *Mr. Keithley:* —Your Honor, we would object to statements made out of the presence of the Defendants.
> *Court:* Okay. We'll show that overruled."

Record at 536.

Crafton argues that 1) Larry Smith's prior statement was inadmissible for substantive purposes even under the *Patterson* rule; and alternatively, 2) assuming that the statement might have been admissible for impeachment purposes, the court erred in admitting it where proper foundation for its admission had not been laid.

██ We first dispense with the improper foundation claim. Assuming that the State's purpose in introducing Larry Smith's prior inconsistent oral statement through Detective Adams' testimony was merely to impeach its own witness, any foundational infirmities are waived. Trial counsel objected to Detective Adams' testimony on the ground that it involved statements made outside the presence of defendants. Moreover, this same objection was made during Detective Jones' corroborative testimony offered during rebuttal. It is axiomatic that an appellant cannot assert on appeal grounds for objection to the admission of evidence different than those asserted at trial. *Carroll v. State* (1982) Ind., 438 N.E.2d 745, 750; *Carter v. State* (3d Dist.1980) Ind.App., 412 N.E.2d 825, 832. In failing to object at trial for the same reason asserted on appeal, he waives that allegation of error on appeal. *State v. Edgman* (4th Dist.1983) Ind.App., 447 N.E.2d 1091.

██ In any event, we find no merit in Crafton's contention of improper foundation. The foundation required to impeach a witness is a showing of time, place and the person(s) to whom the contradictory statement is alleged to have been made. *Smith v. State* (1981) Ind., 414 N.E.2d 299, 300. The record reveals such foundation here: Smith was asked if he recalled making the

statement to Adams, Jones and Sells on March 7, 1980 at the Marion County Jail. Detective Adams and Jones both testified consistently with Smith as to the time, place, and persons present when the contradictory statement was allegedly made. The discrepancy in dates was as to when the initial conversation between Smith and Appellants Crafton and Smith occurred, not as to when Smith allegedly made a contradictory prior statement to Adams, Jones and Sells.

██ We also reject Crafton's claim of reversible error in the admission through Adams of Larry Smith's prior inconsistent statement as substantive evidence. Although the statement may be inadmissible under the *Patterson* rule as recently modified in *Watkins v. State, supra,* 446 N.E.2d 949, in that Larry Smith *denied* having made the statement, such error was not properly preserved. Counsel failed to object to the State's question which explicitly asked Adams to tell the court and jury what Smith had *"told"* Adams, Jones and Sells at the jail. The question unequivocally called for an out-of-court statement. As a general rule, a party must make a timely and specific objection to the offending question *before* the answer is given in order to preserve the issue for appeal. *See Johnson v. State* (1982) Ind., 432 N.E.2d 1358, 1360; *State v. Edgman, supra,* 447 N.E.2d 1091.

██ Moreover, counsel's objection came only after Adams had already testified that "[Smith] said that the next day or the day after that *he'd talked to Mr. Crafton and Mr. Smith and they admitted* the *robbery* to him." Questions of evidence are waived if there is no objection to such evidence at the time it is offered at trial. *Duvall v. State* (1981) Ind., 415 N.E.2d 718, 719.

██ In light of our holding that Cleary's tape-recorded statement was admissible, we cannot agree with Crafton that reversible error exists with regard to Smith's statement which was merely cumulative of Cleary's statement. *Loudermilk v. Feld Truck Leasing Co. of Indiana* (2d Dist.1976) 171 Ind.App. 498, 358 N.E.2d 160, 166.

## C.

### JENNINGS' PATTERSON STATEMENT

██ Elizabeth Jennings testified that she had a conversation with Detective Adams and Jones on January 11, 1980. She said that she recalled what was said during the conversation, but denied that she had told them anything about the robbery. Detective Adams later testified that he had talked to Jennings on January 11, and he recounted what she had said:

"She told us that Randy Smith, Hopkins, Mr. Crafton along with Steve Banks and Debbie Epperly went to the home of Mr. Barker, that Debbie had knocked on the door and hid on the side of the house. That they held the guy up. They came back and had the money. I said, 'How do you know they had the money?' She said, 'I helped count it.'" Record at 533.

Because no objection had been raised at trial, no error as to the admission of Jennings' out-of-court statement is preserved on appeal. *Duvall v. State, supra,* 415 N.E.2d at 719.

## D.

### EPPERLY'S PATTERSON STATEMENT

Debbie Epperly was called as a witness by the State, and after some preliminary questions establishing that she had been arrested for Barker's robbery and was granted immunity in exchange for her testimony, she was asked to identify State's Exhibit 13, which she said was a statement she gave Detectives Adams and Jones on January 12, 1980. In the statement, Epperly said that she went with Appellants to Barker's home on the night of the robbery, and waited in the car until they returned with a gun, a guitar and some money. Epperly admitted making the statement and acknowledged the signature on the statement as her own. Although the State did not first question Epperly as to the specific contents of the statement, the court admitted her written statement over counsel's objection. In *Lewis v. State* (1983) Ind., 440 N.E.2d 1125, 1130, Justice Givan dis-

cussed the abuse of the *Patterson* exception:

"... the key question in determining whether or not an abuse of the *Patterson* rule has occurred is whether the State has submitted evidence as to the relevant factual events in the case by directly examining (and thereby making available for cross-examination) the witness-declarant about those facts. What we will not permit is for the State to put in substantive evidence of the witness-declarant's version of the facts solely through the admission of the witness' prior statement under the pretext of the *Patterson* rule. At some point the State must put the declarant of the prior statement on the witness stand and elicit testimony as to the facts at issue." [6]

■■■■■ Although *Lewis* (*see also B.M.P. v. State* (1st Dist.1983) Ind.App., 446 N.E.2d 17) lends superficial support to Crafton's claim of error, we will not reverse his conviction for two reasons. As stated previously, the error is waived because Crafton did not allege it in his motion to correct errors. Furthermore, Epperly's testimony established her participation in the robbery along with that of the defendants'. This same evidence had also been admitted without objection through Detective Adams' testimony. Any error in admission of evidence is harmless if the same or similar evidence has been admitted without objection. *State v. Ingram* (1981) Ind., 427 N.E.2d 444, 447; *Barrow v. Talbott* (3d Dist.1981) Ind.App., 417 N.E.2d 917, 926. Therefore, even if the alleged error in the admission of Epperly's statement had been properly preserved, such is harmless.

## IV.

## SUFFICIENCY OF EVIDENCE

In a rather condensed fashion, Crafton argues there was insufficient evidence to sustain his conviction. We reiterate the litany which guides our review: as an appellate tribunal we are not at liberty to weigh the evidence nor judge the credibility of witnesses. Instead, we must view the evidence in a light most favorable to the fact-finder's conclusion, together with the reasonable inferences which can be drawn therefrom. If there is substantial evidence to support the jury's verdict that defendant was guilty beyond a reasonable doubt, we will not disturb this verdict. *Oatts v. State* (1982) Ind., 437 N.E.2d 463.

Barker testified that among the items taken during the robbery was a .22 rifle designed to look like an M–16. According to Cleary, defendants Smith and Crafton not only admitted having committed the robbery, but they also showed him a .22 rifle "made like a M–16 machine gun."

Cecilia Cooper identified Crafton as having been one of the people present at the New Year's Party where the discussion about "ripping off" Barker took place. Barker also testified that Cooper's descriptions of what appellants were wearing at the party fit his assailants.

■■■ Moreover, Epperly's prior statement, and Jennings' and Smith's prior statement admitted without timely objection through Detective Adams established Crafton's participation in the robbery. Although Jennings' and Smith's statements may have been inadmissible hearsay, these statements were nonetheless entitled to the same probative effect afforded to otherwise competent evidence since counsel failed to object. *Turentine v. State* (2d Dist.1979) Ind.App., 179 Ind.App. 161, 384 N.E.2d 1119, 1121.

■■■■ Because his assailants were wearing ski masks, Barker had difficulty in

---

**6.** Given the Supreme Court's disapproval of the use of out-of-court statements as a mere substitute for available in-court testimony (*Samuels v. State* (1978) Ind., 267 Ind. 676, 372 N.E.2d 1186, 1187), considered in conjunction with the Court's requirement, implied in *Lewis,* that the State must set forth an adequate "foundation" before it can introduce a prior statement, it is questionable whether a prior *consistent* statement remains a viable exception under the *Patterson* rule. Once the State elicits in-court "testimony as to the facts at issue," which is consistent with the out-of-court statement, there would appear to be no need for the admission of this out-of-court statement.

identifying them. Although he identified Smith and Hopkins at trial, he did not identify Crafton. However, a conviction may be sustained upon circumstantial evidence. *Willard v. State* (1980) Ind., 400 N.E.2d 151; *Thomas v. State* (4th Dist.1981) Ind.App., 423 N.E.2d 682, 685. In reviewing such a conviction we need not examine the evidence to determine whether it is sufficient to overcome every reasonable hypothesis of innocence; rather, we need only decide whether reasonable inferences supporting the jury's verdict may be drawn from the evidence. *Thomas v. State, supra.* Having carefully examined the evidence, we conclude that there was sufficient evidence of probative value from which the jury could have reasonably inferred Crafton's guilt. We therefore affirm his conviction, as well.

Judgment as to all defendants affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.